WILLIAM PURIFICATO AND MARIE PURIFICATO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN PURIFICATO AND CATHERINE PURIFICATO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Purificato v. Commissioner
Docket Nos. 40369-86, 40447-86[1]
United States Tax Court
T.C. Memo 1992-580; 1992 Tax Ct. Memo LEXIS 614; 64 T.C.M. (CCH) 942; September 29, 1992, Filed *614 Decisions will be entered for respondent. For Petitioners: Thomas W. Ostrander and Joshua Sarner. For Respondent: John E. Becker, Jr. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: William Purificato and Marie Purificato docket No. 40369-86 Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 197,422
$ 9,872
50 percent of
-- the interest due
on $ 197,422
1982
156,741
7,837
50 percent of
$ 15,674
the interest due
on $ 156,741
1983
166,043
8,302
50 percent of
16,604
the interest due
on $ 166,043
John Purificato and Catherine Purificato docket No. 40447-86 Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 207,542
$ 10,377
50 percent of
-- the interest due
on $ 207,542
1982
164,659
8,233
50 percent of
$ 16,466
the interest due
on $ 164,659
1983
178,965
8,948
50 percent of
17,897
the interest due
on $ 178,965
The sole issue for decision is whether petitioners Marie and Catherine *615 Purificato are entitled to relief from liability for deficiencies in Federal income tax and additions to tax under the so-called innocent spouse provisions of section 6013(e). [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. All petitioners resided in Philadelphia, Pennsylvania, at the time they filed their petitions. Petitioners William and Marie Purificato are husband and wife, as are petitioners John and Catherine Purificato. William and John Purificato are brothers. The deficiencies determined by respondent arise from unreported income of Apollo Caterers, Inc., an S corporation owned by William and John Purificato. Apollo Caterers, Inc. (Apollo), operated lunch trucks that served *616 various businesses and factories in the Philadelphia area. Respondent determined that Apollo had unreported income for taxable years 1981, 1982, and 1983 in the amounts of $ 655,620, $ 668,064, and $ 731,254, respectively. Respondent issued notices of deficiency allocating this unreported income to William and Marie Purificato, and to John and Catherine Purificato, based on each brother's percentage of ownership in Apollo. William Purificato owned 49 percent of the stock of the corporation, and John Purificato owned 51 percent. Petitioners dispute respondent's determinations. However, for purposes of settlement, the parties have stipulated that the amounts of the deficiencies and additions to tax are as follows: William Purificato and Marie Purificato docket No. 40369-86 Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 95,459
$ 4,773
50 percent of
-- the interest due
on $ 95,459
1982
81,398
4,070
50 percent of
$ 16,280
the interest due
on $ 81,398
1983
83,310
4,166
50 percent of
16,662
the interest due
on $ 83,310
John Purificato and Catherine Purificato docket No. 40447-86 Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 101,191
$ 5,060
50 percent of
-- the interest due
on $ 101,191
1982
86,240
4,312
50 percent of
$ 17,248
the interest due
on $ 86,240
1983
92,855
4,643
50 percent of
18,571
the interest due
on $ 92,855
*617 Marie Purificato
At the time of trial, Marie Purificato was 52 years old. She has been married to William Purificato since 1961. She has a 10th-grade education and generally did not work outside the home. Marie was not involved with the operation of Apollo during the years in issue. Marie and her husband lived in a three-bedroom row house, held in Marie's name, which they purchased in 1968 for $ 9,000. In addition to their personal residence, William and Marie owned two other residential properties, one on Weymouth Street in Philadelphia, where Marie's mother-in-law lived, and one on Iris Road in Millville, New Jersey, where Marie's mother lived. The Weymouth Street property was a small two-bedroom home that they purchased in 1972 for $ 6,000. The Millville property was a three-bedroom bungalow that they purchased in 1976 for $ 5,000. Marie Purificato was responsible for the household finances during the years in issue. She wrote checks to pay the mortgage, automobile loans, utilities, property taxes, pharmacy bills, and insurance. She testified that she spent approximately $ 75 a week on groceries. Some of the expenditures made by Marie and her husband are summarized *618 in the schedules below: 1981
Mortgage (VNB)
$  1,411.96
Taxes:
City of Philadelphia
197.28
IRS
83.00
Pennsylvania
65.00
Commercial Township
228.86
Utilities:
Atlantic Electric
236.41
Philadelphia Electric
919.55
Philadelphia Gas
787.93
Insurance:
Homeowners
37.71
Auto
545.43
Life
215.50
Car payments (GM)
2,979.72
Telephone:
Pennsylvania Bell
266.13
New Jersey Bell
156.47
Rent to Mattson
2,220.00
Attorney's fees
2,137.00
Classic T-Bird Club
28.00
Eyeglasses
17.41
Laurel Lake Assoc.
110.00
Pa. Transportation Dept.
78.50
Miscellaneous
91.86
Food
3,900.00
Total
$ 16,713.72
1982
Mortgage (VNB)
$  1,470.60
Taxes:
City of Philadelphia
221.14
IRS
745.62
Pennsylvania
150.00
Commercial Township
521.60
Utilities:
Atlantic Electric
227.28
Philadelphia Electric
977.63
Philadelphia Gas
1,043.21
Insurance:
Homeowners
74.14
Auto
1,558.00
Fire
4.00
Life
517.20
Car payments (GM)
2,979.85
Telephone:
Pennsylvania Bell
434.38
New Jersey Bell
94.84
Rent to Mattson
2,220.00
Attorney's fees
2,500.00
Classic T-Bird Club
6.00
Eyeglasses
15.91
Laurel Lake Assoc.
110.00
Pa. Transportation Dept.
48.00
Miscellaneous
996.70
Food
3,900.00
Sun Electric Corp.
560.28
U.S. savings bonds
600.00
Total
$ 21,976.38
*619 1983
Mortgage (VNB)
$  1,327.15
Taxes:
City of Philadelphia
372.77
IRS
240.00
Pennsylvania
303.00
Commercial Township
600.05
Utilities:
Atlantic Electric
471.57
Philadelphia Electric
974.23
Philadelphia Gas
934.23
Insurance:
Homeowners
40.60
Auto
2,678.75
Life
948.20
Medical
910.08
Other
153.16
Unreimbursed medical
380.45
Car payments:
GM
2,979.72
Ford
3,776.16
Telephone:
Pennsylvania Bell
336.91
New Jersey Bell
138.56
Rent to Mattson
2,035.00
Attorney's fees
194.00
Classic T-Bird Club
152.00
Laurel Lake Assoc.
120.00
Pa. Transportation Dept.
121.00
Miscellaneous
281.44
Food
3,900.00
U.S. savings bonds
600.00
Total
$ 24,969.03
William and Marie claimed exemptions for three dependent children on their 1981 tax return. On their 1982 and 1983 tax returns, they claimed exemptions for two dependent children and William's mother. During the years in issue, Marie and William owned five automobiles: A 1978 Lincoln Mark V, a Chrysler Cordoba, a Chevrolet Blazer, a used Cadillac of unknown vintage, and a 1983 Lincoln Mark VI. The 1983 Lincoln was purchased in 1983 for $ 27,662.15. William *620 Purificato received credit of $ 5,858 on the trade-in of their 1978 Lincoln, made a cash downpayment of $ 4,243, and financed $ 17,957 of the remaining purchase price. In response to respondent's interrogatories, William and Marie supplied the following information regarding their bank accounts and investments. In 1981, they acquired five certificates of deposit (CD's), four in the amount of $ 10,000, and one with a balance of $ 10,092.83. Three of the CD's acquired in 1981, totaling $ 30,000, were closed in 1982. In 1982, they acquired another $ 10,000 CD and $ 40,320 was deposited in their joint savings account. The CD was closed in 1982 and the savings account was apparently closed in 1983. William also apparently acquired an additional CD (account No. 241283739) of unknown amount in 1982. During 1983, $ 73,452 was deposited in their joint "Gold Edge" bank account. William also acquired a $ 10,000 CD in 1983. The CD purchased in 1983 was apparently closed out in that same year. With the exception of the CD of unknown amount acquired in 1982, and the $ 10,000 CD acquired in 1983, each of the above accounts was in the name of both William and Marie Purificato. William *621 and Marie Purificato reported adjusted gross income for taxable years 1981, 1982, and 1983 in the amounts of $ 18,670, $ 19,838, and $ 14,694, respectively. These returns reflect interest income for the years 1981, 1982, and 1983 in the respective amounts of $ 6,820, $ 7,642, and $ 3,436. [3] George Schrader, petitioners' accountant, prepared William and Marie Purificato's individual income tax returns as well as Apollo's returns for the years in issue and for all years since 1970. The extent of Marie Purificato's involvement in the preparation of the returns was to save any papers that said "Tax Information" until Mr. Schrader called to say she should send such information to Apollo. After Mr. Schrader prepared their individual returns, he mailed them to William and Marie's home *622 with instructions to sign at the "X" and to mail them to the Internal Revenue Service. Upon receipt of the tax returns, Marie would look for the "X" and sign there. Marie did not review any of the figures on the tax returns before signing them, nor did she discuss them with her husband. During the years in issue, Marie experienced numerous problems with her family. Her husband, William, had a severe drinking problem and gambled. Their son, William, who was 18 years old in 1981, had a drug abuse problem and was the subject of several criminal proceedings which included charges of rape, escape from custody, possession of a handgun, and assault. Marie had similar problems with her son, Michael, who had quit school and was using drugs at age 13. Michael was charged with delinquency in 1982, and charged and convicted of theft and receiving stolen property in 1983. Their daughter, Denise, returned home to escape an abusive husband. In addition, Marie's mother and mother-in-law were in poor health during the years in issue. Catherine Purificato
At the time of trial, Catherine Purificato was 50 years old. She has been married to John Purificato since she was 17. Catherine *623 was not involved in the operation of Apollo during the years in issue, except for a few hours a week in 1983 that she worked cleaning the kitchen. John and Catherine lived in a three-bedroom row house, which they had purchased in 1961 for $ 11,990. They financed the purchase of the house, except for a downpayment of $ 500. During the years in issue, Catherine drove a 1980 Buick, which was purchased in 1980 for $ 11,000. John and Catherine traded a previous car in on the Buick and financed part of the purchase over 2 years. Title to the car is in both John and Catherine Purificato's names. Catherine Purificato also drove a 1980 Ford Granada in 1983. That car was titled in her mother's name. Like Marie, Catherine Purificato was responsible for the family finances. She wrote checks for the bills to which she signed her husband's name, since the bills were in his name. She also made deposits to their bank accounts. In response to respondent's interrogatories, John and Catherine supplied the following information regarding their bank accounts and investments. In 1981, they had two bank accounts and owned two CD's and two insurance company accounts of undisclosed amounts. In *624 1982, they acquired five CD's of undisclosed amounts. In 1983, John and Catherine purchased 500 shares of preferred stock of Public Service Gas & Electric Co. on the following dates, in the following amounts: 4/27/83
100 shares for $ 6,648.54
4/27/83
100 shares for $ 6,672.54
4/28/83
50 shares for $ 3,357.25
4/29/83
100 shares for $ 6,673.54
5/10/83
100 shares for $ 6,773.54
5/11/83
50 shares for $ 3,407.74
John and Catherine Purificato filed joint returns for taxable years 1981, 1982, and 1983 reporting adjusted gross income of $ 23,880, $ 25,064, and $ 27,396, respectively. These returns reflect interest income for the years 1981, 1982, and 1983 in the respective amounts of $ 1,548, $ 5,175, and $ 3,698. These returns also reflect dividend income of $ 2,925 for 1983 and no dividend income for 1981 and 1982. [4] John and Catherine claimed exemptions for two dependent children on their 1981 return and for one dependent child on their 1982 and 1983 returns. The returns were prepared by Mr. Schrader and mailed to John, who would place the forms in front of Catherine for her to sign. Catherine Purificato did not review the returns when she signed them. She did not *625 discuss the returns with Mr. Schrader or her husband, nor did she supply information for their preparation. Catherine experienced substantial family problems during the years in issue. Her son, John, Jr., was involved in drug use and was arrested several times during the years in issue for possessing a controlled substance and driving under the influence of a controlled substance. Catherine's father was suffering from cancer during the years in issue. After her father's death in 1982, the health of Catherine's mother deteriorated. OPINION The sole issue to be decided is whether Marie and Catherine Purificato are entitled to innocent spouse treatment under section 6013(e). Under section 6013(d)(3), a husband and wife who file a joint return are jointly and severally liable *626 for the tax due. However, an "innocent" spouse is relieved of liability if he or she proves that: (1) A joint return has been made for a taxable year; (2) there is a substantial understatement of tax on the return attributable to grossly erroneous items of the other spouse; (3) in signing the return, he or she did not know, and had no reason to know, of the substantial understatement; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1); [5]Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). In order to qualify for relief, petitioners must prove that each of the four requirements of section 6013(e) has been satisfied. Rule 142(a); Purcell v. Commissioner, 826 F.2d at 473; Flynn v. Commissioner, 93 T.C. 355, 359 (1989); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). *627 Respondent does not dispute that the first two elements are satisfied. Respondent contends, however, that both Marie and Catherine Purificato knew or had reason to know of the understatements. Respondent also contends that both Marie and Catherine significantly benefited from the omissions on the returns and that it would not be inequitable to hold them liable for the resulting deficiencies and additions to tax. We will address the last element first. Whether it is inequitable to hold a spouse liable is to be determined on the basis of all the facts and circumstances. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. Although section 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited from the erroneous items, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989); see Day v. Commissioner, T.C. Memo. 1991-140. Marie and Catherine bear the burden of proving that they did not significantly benefit from the erroneous items. Estate of Krock v. Commissioner, supra. *628 Petitioners contend that there is no evidence that Marie or Catherine Purificato received any benefit from their husbands' omitted income. They argue that William and John Purificato never provided money or property to them other than the minimal amount necessary for ordinary support. Normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Flynn v. Commissioner, supra at 367; Purcell v. Commissioner, 86 T.C. at 242; Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979); sec. 1.6013-5(b), Income Tax Regs. Normal support is to be measured by the circumstances of the parties. Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975); Flynn v. Commissioner, supra at 367. "Unusual support or transfers of property to the spouse would, however, constitute 'benefit' and should be taken into consideration". Estate of Krock v. Commissioner, supra at 679 (quoting S. Rept. 91-1537 (1970), *629 1971-1 C.B. 606, 607-608). Petitioners attempted to establish that both Marie and Catherine, if not their husbands, led very austere lifestyles. Both wives testified that during the entire time they were married, they never took a vacation, attended a movie, or went out to dinner with their husbands. They also both testified that during the years in issue, and at the time of trial, they owned no furs and little jewelry. [6]
William and Marie's checking account records are not inconsistent with a simple lifestyle. [7] On the other hand, there is evidence indicating that they were accumulating substantial assets during the years in issue, most of which were held jointly by William and Marie Purificato. *630 In 1981, William and Marie acquired CD's in the amount of $ 50,000. In 1982, they deposited at least $ 40,000 in a savings account. While some of the CD's from the previous year were closed out in 1982, petitioners have not attempted to demonstrate that the $ 40,000 account opened in 1982 was opened with the proceeds of the closed CD's. In 1983, an account was opened with $ 73,452. Again, petitioners made no attempt to demonstrate that the 1983 deposits represented the proceeds of previously acquired CD's or savings accounts. All these accounts were held jointly in the names of William and Marie Purificato. [8] Therefore, over the 3 years in issue, Marie became joint owner of substantial accounts. Marie has not proven that she was unaware of these investments. [9] The amounts placed in these accounts greatly exceed the income reported by William and Marie Purificato during the years in issue, and the evidence in the record indicates that William and Marie's living expenses would have consumed all their reported income. *631 William did not testify at trial in support of Marie's position. n10 However, William did provide answers to respondent's interrogatories that were part of the parties' stipulation of facts. In answer to respondent's question about bank accounts in which he had an interest during the years in issue, William provided the previously described information concerning accounts and CD's. When Marie was asked the same question, she simply referred to William's response. In answer to respondent's question whether William made any other investments in stocks, bonds, or assets (other than the previously described accounts) during the years 1980 through 1985, William answered: Answer: Petitioner Marie Purificato has purchased one $ 100 (face value) savings bond (Double E) which [has] been placed in trust for her grandchildren, for each month from 1982 through 1985. By way of further answer, after reasonable effort and inquiry, Petitioners are unable to locate the records necessary to completely answer Interrogatory Number 15. When Marie was asked the same question, she simply referred to her husband's answer. Given the magnitude of the amounts of income and tax at issue, we find *632 William's and Marie's answers incompatible with Marie's argument that she has met her burden of proving that it would be inequitable to hold her liable for the agreed-upon tax. Based on the entire record, including the fact that substantial deposits were made to jointly held bank accounts and CD's, we find that Marie Purificato has failed to prove that she did not receive a significant benefit from the items omitted from income or the substantial understatement of income tax for the years in issue, and therefore, hold that she has not met her burden of proving that it would be inequitable to hold her liable for the deficiencies and additions to tax. Petitioner Catherine Purificato has presented even less evidence in this vein. Catherine did not introduce any documentary evidence of her and John's living expenses during the years in issue. [11] Like Marie, Catherine testified that she led an austere lifestyle consistent with the amounts of income reported for the years in issue. She also testified that in the 33 years she was married to John Purificato, she and her husband had never taken a vacation, never gone to the movies or the theater, and had never gone out to dinner. She *633 testified that she spent $ 75 to $ 100 a week on food and $ 50 a year on clothing. The record indicates that John and Catherine Purificato made a number of investments during the years in issue. In response to respondent's interrogatory to John Purificato asking him to identify his bank accounts during the years in issue, he indicated that he had two CD's and two Prudential Insurance Co. accounts in 1981; [12] five other CD's in 1982; and 500 shares of preferred stock in Public Service Electric & Gas Co. in 1983 plus a State Farm Life account. With the exception of the preferred stock, which John indicated was held in both his and Catherine's names, he failed to disclose the amounts of these investments or in whose name title was held. [13] John's response does not indicate that this is a *634 complete list of accounts. After disclosing the above information, his answer states: "By way of further answer, Petitioner, after reasonable effort and inquiry, is unable to find records to more fully answer interrogatory number 11." [14]
*635 Catherine's response to respondent's interrogatory about her bank accounts simply refers to her husband's answer. She provided no additional evidence concerning bank accounts during the trial. In response to respondent's interrogatory asking for information regarding other investments made during the years in issue, John Purificato simply referred to his previously described answer. Beyond that, his answer stated: "By way of further answer, petitioners, after reasonable effort, are unable to locate the records necessary to further answer Interrogatory #15." In response to the same question, Catherine Purificato answered: "Petitioner, Catherine Purificato personally made no investments. By way of further answer, see Petitioner John Purificato's response to Interrogatory number 15." Catherine Purificato offered no further evidence regarding her and her husband's investments. At trial she testified that she could not recall the amounts of the CD's owned by her or John or whether she was a joint owner of the CD's. Catherine Purificato has failed to present sufficient evidence for us to find that she did not significantly benefit from the items omitted from income or from her husband's *636 substantial understatement of income tax. Therefore, she has failed to carry her burden of proving that it would be inequitable to hold her jointly liable for the tax deficiencies and additions thereto for the years in issue. Petitioners introduced a great deal of evidence at trial that both Marie and Catherine Purificato experienced extensive family problems during the years in issue. This evidence was intended to demonstrate that Marie and Catherine Purificato did not know, or have reason to know, of the understatements of income tax. Because we hold that petitioners have not proven that it would be inequitable to hold Marie and Catherine Purificato jointly and severally liable with their husbands for the taxes and additions to tax in issue, we will not address whether they knew, or had reason to know, of the understatements. Decisions will be entered for respondent. Footnotes
1. This Court granted petitioners' motion to consolidate the case at docket No. 40369-86 with the case at docket No. 40447-86 for purposes of trial, briefing, and opinion.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. On their 1978, 1979, and 1980 tax returns, William and Marie reported interest income of $ 504, $ 1,048, and $ 2,970, respectively. Their reported adjusted gross income for those years was $ 3,504, $ 10,548, and $ 15,470, respectively.↩
4. On their 1978, 1979, and 1980 tax returns, John and Catherine reported interest income of $ 368, $ 675, and $ 1,979, respectively. Their reported adjusted gross income for those years was $ 18,131, $ 21,545, and $ 25,071, respectively.↩
5. The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, amended sec. 6013(e) retroactively to all years to which the Internal Revenue Code of 1954 applies.↩
6. Catherine testified that she spent only $ 50 per year on clothing for herself.↩
7. We note, however, that their personal living expenses during the 3-year period at issue exceeded their reported adjusted gross income for the same period.↩
8. Two additional CD's were in William's name. ↩
9. During her direct testimony, she recalled going to the bank with her husband: "Well, my husband took me over the bank and we both had to sign a card, and it was CD's he got."↩
11. Catherine failed to produce any records of expenditures made by check and failed to produce records of expenditures made by credit card, despite acknowledging the existence of at least four credit cards in their joint names.↩
12. John Purificato's response indicates that the Prudential accounts were owned during each of the years in issue. ↩
13. John Purificato's response indicates that the Public Service Electric & Gas Co. stock cost $ 33,533.15 in 1983. Catherine Purificato testified that the Public Service Electric & Gas Co. stock was purchased for the benefit of her mother with her mother's savings. However, she provided no corroboration, nor did she introduce any documentation indicating the source of these funds. Catherine testified that her parents' savings totaled approximately $ 54,000. She offered no explanation for the difference between the total amount of savings and the total amount of stock purchased. ↩
14. John Purificato did not testify at trial. His answers to respondent's interrogatories were part of the stipulation of facts. There is no indication that John and Catherine were divorced or separated at the time of trial.↩