**William and Marie PURIFICATO**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE.**

**John and Catherine PURIFICATO**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE.**

**William and Marie Purificato; John and Catherine Purificato, Appellants.**

No. 92–7659

United States Court of Appeals, Third Circuit.

Argued June 24, 1993.

Decided Nov. 10, 1993.

Thomas W. Ostrander, Joshua Sarner (argued), Duane, Morris & Heckscher, Philadelphia, PA, for appellants.

James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Gilbert S. Rothenberg, Curtis C. Pett (argued), Attys., Tax Div., Department of Justice, Washington, DC, for appellee.

Before: BECKER, ALITO, and ROTH, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a decision of the United States Tax Court holding that Marie and Catherine Purificato are not entitled to relief under the so-called "innocent spouse" provision of the income tax laws, 26 U.S.C. § 6013(e), and that therefore each is jointly and severally liable with her husband for amounts due as a result of the understatement of taxes on their joint returns for 1981, 1982, and 1983. We affirm.

I.

Marie Purificato is married to William Purificato, and Catherine Purificato is married to William's brother John. William and John owned and operated Apollo Caterers, Inc., a Subchapter S corporation. For the years in question, each couple filed joint income tax returns claiming a share of operating losses that they claimed Apollo had experienced.[1] William and Marie's returns reported adjusted gross income for 1981, 1982, and 1983 in the amounts of $18,670, $19,838, and $14,694 respectively. For these same years, John and Catherine's returns reported adjusted gross income of $23,880, $25,064, and $27,396.

After an audit, the Commissioner of Internal Revenue determined that, contrary to the couples' returns, Apollo had actually made a profit in each of the years at issue, and that its total profit during the three-year period exceeded two million dollars. The Commissioner issued notices of deficiency asserting that both couples owed more than $500,000 in taxes, as well as additions to tax. Each couple subsequently petitioned the tax court for redetermination of the deficiencies. After negotiation, partial settlements were reached. For purposes of the pending cases, the amount of taxes and additions owed for each year was stipulated. The parties could not, however, come to an agreement on whether Marie and Catherine Purificato were jointly liable with their husbands or whether they were entitled to relief under the "innocent spouse" provision, 26 U.S.C. § 6013(e). The cases were then consolidated, and the tax court conducted a trial on the issue of "innocent spouse" relief.

After the trial, the tax court held that Marie and Catherine were not entitled to such relief. The court first stated that Marie and Catherine bore the burden of proving that all four of the elements set out in §§ 6013(e)(1)(A)–(D) were satisfied. The court found that two of these elements (those contained in §§ 6013(e)(1)(A) and (B)) were met, and it declined to rule on another element (that contained in § 6013(e)(1)(C)).

---

1. Because Apollo was a Subchapter S corporation, its losses were passed through to its stockholders in proportion to their ownership interests. See 26 U.S.C. §§ 1361–68, 1371–79. John Purificato owned 51% of the stock of Apollo, and William owned the other 49%.

The tax court held, however, that neither Marie nor Catherine had satisfied the element set out in § 6013(e)(1)(D), which requires proof that "taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax...." According to the court, one of the facts and circumstances that should be considered under this subsection is "whether a spouse significantly benefitted from the erroneous items." *Purificato v. Commissioner*, 64 T.C.M. (CCH) 942, 946, 1992 WL 238769 (1992). Based on the Purificatos' answers to interrogatories, the court found that both couples had acquired substantial joint assets during the years in question. The court also noted that neither couple had made a full disclosure of assets. In light of these facts, the court held that neither Marie nor Catherine had proven that she did not receive a significant benefit from the income omitted from the returns.

After the tax court entered its judgment, the Purificatos filed a notice of appeal.

## II.

■ Under 26 U.S.C. § 6013(d)(3), a husband and wife who make a joint income tax return are jointly and severally liable for the full amount owed. *See also Stevens v. Commissioner*, 872 F.2d 1499, 1503 (11th Cir. 1989). The so-called "innocent spouse" provision, 26 U.S.C. § 6013(e), creates a limited exception to this rule. This provision states in pertinent part:

Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know,

and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.[2]

26 U.S.C. § 6013(e)(1). In order to qualify for relief under this provision, the claimant bears the burden of proving all four of the elements set out in subsections (A) to (D). *See, e.g., Stevens*, 872 F.2d at 1504; *Purcell v. Commissioner*, 826 F.2d 470, 473 (6th Cir. 1987); *Ballard v. Commissioner*, 740 F.2d 659, 663 (8th Cir.1984).

■ Subsection (D), the focus of the current appeal, does not expressly mention the importance of whether a claimant "significantly benefitted" from the understatement of tax, but the history of the "innocent spouse" provision supports the tax court's conclusion that this question should be considered in determining whether joint and several liability would be inequitable.[3] As originally enacted in 1971, the "innocent spouse" provision expressly required consideration of this question. The predecessor of what is now subsection (D) required proof that:

taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission.

Pub.L. No. 91–679, § 1, 84 Stat. 2063 (1971) (emphasis added). The relevant portion of the Senate Report stated, however, that a spouse's benefit or lack of benefit was not

---

**2.** This version of the statute was adopted by Congress in 1984, but Congress specifically provided that it was to be applied to subsequent litigation concerning certain previous taxable years, including the years at issue in this case. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 424(c)(1), 98 Stat. 494, 803 (1984).

**3.** This view of 26 U.S.C. § 6013(e)(1)(D) has also been adopted by other courts of appeals. *See Clevenger v. Commissioner*, 826 F.2d 1379, 1382 (4th Cir.1987); *Estate of Krock v. Commissioner*, 93 T.C. 672, 678, 1989 WL 148355 (1989).

294

necessarily determinative, and the report added the following:

> Other factors which could also be taken into account, in appropriate situations, in determining whether it is inequitable to hold the spouse liable for the deficiency include the fact of whether the spouse in question is deserted or is divorced or separated.

S.Rep. No. 91–1537, 91st Cong., 2d Sess., 3, *reprinted in* 1970 U.S.C.C.A.N. 6089, 6092.

In 1984, the "innocent spouse" provision was amended to take its present form. Among other things, this amendment substituted the more general language that now appears in § 6013(e)(1)(D) ("taking into account all the facts and circumstances") for the more specific language that appeared in the 1971 version ("whether or not the other spouse significantly benefitted directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances"). The House Report explained:

> The bill does not specifically require that the determination of whether it would be inequitable to hold the innocent spouse liable include the consideration of whether such spouse benefitted from the erroneous item, but *that factor should continue to be taken into account.*

H.R.Rep. No. 98–432, Part II, 98th Cong., 2d Sess., 1502, *reprinted in* 1984 U.S.C.C.A.N. 697, 1143–44 (emphasis added).

### III.

With this background in mind, we address the specific arguments raised in this appeal. We turn first to the appellants' contention that the tax court erred in finding that Marie and Catherine Purificato "significantly benefitted" from the omitted income.

■ A. As part of this argument, the appellants first suggest that the tax court erred as a matter of law in concluding that acquiring savings or other investment assets may constitute a significant benefit. The appellants seem to suggest that only present consumption can constitute such a benefit. We quickly reject this argument. It is inconsistent with the ordinary meaning of the term "significant benefit"; it is not supported by case law or any other authority of which we are aware; and, in relation to the income tax laws (which of course tax income not consumption), it simply does not make sense.

■ B. The appellants next contend that the tax court erred in calculating the value of the joint assets that they acquired. Since this argument is purely factual, we must apply the clearly erroneous standard of review. 26 U.S.C. § 7482(a)(1); *Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); *Demkowicz v. Commissioner,* 551 F.2d 929, 931 n. 4 (3d Cir.1977). The appellants fall far short of satisfying this standard.

1. We turn first to the evidence concerning Marie Purificato. The tax court found that William and Marie Purificato, as joint tenants, acquired $50,092.83 in certificates of deposit in 1981 and a $10,000 certificate of deposit in 1982. The tax court also found that they deposited $40,320 in a joint savings account in 1982 and $73,452 in another joint bank account in 1983. If these figures are added up, the joint assets acquired by William and Marie were $50,092.83 in 1981, $50,320 in 1982, and $73,452 in 1983—for a total of $173,864.83.

The tax court also found that William and Marie failed to prove that they did not acquire additional assets. William responded as follows to an interrogatory concerning their assets:

> [Question] 15. During the period 1980 through 1985, did you make any investments in stocks, bonds, or any other assets not described elsewhere herein. If so, specify the assets, amount and date of purchase, the name of any co-owner thereof or the name of any person in whose name title or ownership was taken, and the name of the broker, investment advisor or bank involved.

> Answer: Petitioner Marie Purificato has purchased one $100 (face value) savings bonds (Double E) which have [sic] been placed in trust for her grandchildren, for each month from 1982 through 1985.

> *By way of further answer, after reasonable effort and inquiry, Petitioners are*

*unable to locate the records necessary to completely answer Interrogatory Number 15.*

App. at 232–33 (emphasis added). Marie Purificato's response to an identically worded inquiry read: "Please see response of William Purificato to interrogatory # 15." App. at 252. These responses clearly leave open the possibility that William and/or Marie acquired additional assets worth substantial amounts.

On appeal, William and Marie argue that they actually acquired no more than $100,000 in joint assets during the period in question. They contend that the tax court double-counted some funds because it failed to recognize that these funds had been transferred from one certificate of deposit or account to another. In support of this contention, they ask us to draw inferences based on the assumption that the assets they did disclose were the only assets that they owned or acquired during the years in question.[4] But since William and Marie were unable or unwilling to state under penalty of perjury that they did not own other assets, we refuse to proceed on the basis of this assumption. William and Marie also ask us to draw other inferences that, even if consistent with the record, are hardly compelled by it.[5] Accordingly, we cannot hold that the tax court's calculations were clearly erroneous. Moreover, even if the appellants' own figure of $100,000 in joint assets acquired from 1981 to 1983 were correct, Marie Purificato's share of that sum would still constitute a significant benefit.

■ 2. We now turn to the evidence concerning John and Catherine Purificato, whose disclosure of assets was even less complete then that of William and Marie. The tax court found that in 1983 John and Catherine acquired 500 shares of Public Service

Electric & Gas preferred stock for approximately $33,500. Their answers to interrogatories also disclosed that they had acquired seven certificates of deposit in 1981 and 1982, but these answers did not reveal whether title was held by John alone or by John and Catherine jointly. In response to interrogatory number 15, which was quoted above, John and Catherine stated as follows:

By way of further answer, Petitioners, after reasonable effort, are unable to locate the records necessary to further answer Interrogatory No. 15.

App. at 263. As previously noted, this type of answer leaves open the possibility that one or both spouses held additional assets of significant value. Thus, in light of the assets that John and Catherine did disclose, and in light of their failure to make complete disclosure of their assets, we hold that the tax court did not commit clear error in finding that Catherine Purificato failed to prove that she did not derive significant benefit from the omitted income.

### IV.

■ A. The appellants contend that, even if Marie and Catherine derived significant benefit from the omitted income, they were nevertheless entitled to "innocent spouse" relief. The appellants argue that other "facts and circumstances" were sufficient to satisfy § 6013(e)(1)(D). These additional facts and circumstances may be separated into the following three categories: (1) what the appellants term "the wives' meager lifestyles," (2) what the appellants describe as "the gut-[w]renching family tragedies" that Marie and Catherine had suffered, and (3) Marie and Catherine's alleged "lack of knowledge or reason to know of the omitted income." Appellants' Br. at 24.

---

4. For example, William and Marie note that the sum of the assets they disclosed as having held in 1983 was less than the corresponding figure for 1982. They then argue that the assets acquired in 1983 must have been paid for using assets held in 1982. *See* Appellants' Br. at 33.

5. For example, William and Marie ask us to infer that the $40,320 savings account deposit in 1982 occurred near the end of the year, because the

total annual interest on this account was small. They then ask us to infer that the $40,320 came from some of the certificates of deposit acquired in 1981, since these certificates were closed near the end of 1982. Appellants' Br. at 32. Clearly, however, there are other possible explanations for these events, particularly given William and Marie's failure to make a complete disclosure of their assets.

In order to determine whether § 6013(e)(1)(D) requires consideration of facts and circumstances such as these, we begin with the statutory language. We note that this language does not require that weight be given to every personal fact and circumstance that a taxpayer chooses to adduce. Rather, the statute requires a determination whether, in light of all the facts and circumstances, "it is inequitable to hold the other spouse liable for the deficiency." Accordingly, § 6013(e)(1)(D) expressly requires that weight be given to only those facts and circumstances that have a rational bearing on a putatively "innocent spouse's" liability for the deficiency. By clear implication, the statutory language permits all other facts and circumstances to be disregarded.

■ The evolution and legislative history of § 6013(e) are fully consistent with this interpretation. As noted, the provision's legislative history strongly suggests that the following "facts and circumstances" should be considered under what is now § 6013(e)(1)(D): whether the supposedly "innocent spouse" significantly benefitted from the omitted income,[6] and whether that spouse "is deserted or is divorced or separated."[7] All of these facts and circumstances have a clear and rational relationship to the question whether it would be inequitable to hold a spouse liable. If a spouse benefitted from the omitted income, equity may weigh in favor of requiring the spouse to pay the tax and additions attributable to the omitted income. On the other hand, if the spouse did not specifically benefit, was subsequently deserted, divorced, or separated, and would have to pay the tax and additions from his or her own assets, equity may weigh in favor of relief. Thus, the evolution and legislative history of § 6013(e)(1)(D) support the conclusion that the "facts and circumstances" that must be considered are those having a rational bearing on whether a putatively "innocent spouse" should be held liable for taxes and additions due.

B. In light of this understanding of 26 U.S.C. § 6013(e)(1)(D), we consider the three categories of facts and circumstances that the appellants contend the tax court improperly failed to consider.

1. As previously noted, the first category concerns what the appellants term "the wives' meager lifestyle." Appellants' Br. at 24. The appellants' brief sums up this lifestyle as follows: "No dinners, no theater, no movies, no ballgames, no vacations, no furs, no jewelry, no nice cars, etc." Appellants' Br. at 30.

■ We believe that evidence of a spouse's modest or "meager" lifestyle may be relevant in determining whether the spouse significantly benefitted from omitted income—the topic previously discussed in part III of this opinion.[8] Such evidence may also be relevant in determining whether the spouse knew or had reason to know of omitted income—which is discussed below in part IV B 3 of this opinion. Such evidence, however, is not otherwise relevant in determining whether a taxpayer is entitled to "innocent spouse" relief. If a spouse benefits from the omitted income by accumulating assets from which tax deficiencies may later be paid but leads a modest or "meager" lifestyle, it is not inequitable to hold that spouse liable for the deficiencies. The income tax laws, as noted, tax income, not consumption, and thus a "meager lifestyle" is not per se relevant in this context.

Furthermore, we cannot believe that Congress, in enacting § 6013(e)(1)(D), intended to require the kind of investigations and trials that would be needed if entitlement to "innocent spouse" relief depended on facts and circumstances of this type. For example, we do not think that Congress wanted to require the Internal Revenue Service to investigate whether the Purificato couples ever went out to dinner, to the movies, or to a ballgame. Nor do we think that Congress wanted to require the tax court to conduct a trial and make findings on such questions.

---

6. See H.R.Rep. No. 98–432, *supra,* at 1502, 1984 U.S.C.C.A.N. at 1143–44.

7. S.Rep. No. 91–1537, *supra,* at 3, 1970 U.S.C.C.A.N. at 6092.

8. As noted, however, the acquisition of investment assets may also constitute a significant benefit. *See* ante at 294.

■ 2. The second category of facts and circumstances on which the appellants rely concerns what they describe as the "personal tragedies" that Marie and Catherine suffered. The appellants' brief recounts at length and in considerable detail Marie and Catherine's trial testimony about these matters. *See* Appellants' Br. at 11–20. In this testimony, Marie and Catherine stated, among other things, that some of their children had committed crimes, used drugs, and experienced other very serious personal problems. They also testified that their own parents and their husbands' parents had been seriously ill and had required considerable care. In addition, Marie testified that her husband was an alcoholic, gambled heavily, and physically abused her.

While the facts and circumstances related by Marie and Catherine evoke our sympathy, these facts and circumstances have no rational bearing on whether it would be inequitable to hold them liable for the taxes and additions due on the joint returns they signed. The income tax laws do not as a general rule provide that those who have experienced unhappiness, tragedy, or abuse at the hands of family members may pay less tax than other people in identical financial circumstances who have experienced happiness, good fortune, and considerate treatment by their families. Given that these facts and circumstances are generally deemed irrelevant for purposes of tax liability, we see no reason why they should not be viewed in the same manner in the particular context presented here. Furthermore, as stated above in connection with the first category of facts and circumstances noted by the appellants, we do not believe that Congress intended to require investigations and trials delving into such intensely private, non-financial matters.

■ 3. The final category of facts and circumstances concerns Marie and Catherine's alleged lack of knowledge or reason to know about the omitted income. As previously noted, a taxpayer seeking relief under § 6013(e)(1) must prove four statutory elements, and one of those elements, which is set out in subsection (C), is that the taxpayer "did not know, and had no reason to know" that the return substantially understated the tax due. Thus, the appellants argue in effect that Marie and Catherine's alleged lack of knowledge or reason to know about the omitted income should count in their favor twice—both under subsection (C) and subsection (D).

We need not and do not reach the question whether actual or constructive knowledge can ever be considered under subsection (D). For present purposes, it is enough to hold that a taxpayer seeking "innocent spouse" relief may not satisfy subsection (D) based *solely* on lack of actual or constructive knowledge, for otherwise subsection (D) would be wholly superfluous. Here, Marie and Catherine failed to adduce any other relevant evidence with respect to subsection (D). Thus, even if they could show lack of actual or constructive knowledge, they could not satisfy subsection (D).

## V.

■ Marie Purificato makes an additional argument. She contends that the record shows at most that she derived a significant benefit from only part of her husband's unreported income, and she argues that she should therefore be jointly liable for no more than the amount of unpaid tax and additions attributable to the portion of the unreported income from which she benefitted.

This argument is based on the Fourth Circuit's decision in *Ratana v. Commissioner*, 662 F.2d 220 (1981). There, a wife seeking "innocent spouse" relief established that she lacked actual or constructive knowledge of most of her husband's unreported income, and the Commissioner conceded both that the wife had received no significant benefit from this portion of the income, and that the equities favored "innocent spouse" relief. *Id.* at 224. Under these circumstances, the Fourth Circuit held that the wife was jointly liable for the tax attributable to the unreported income of which she had actual or constructive knowledge but that she was entitled to "innocent spouse" relief as to the balance of the unreported income. *Id.* at 225.

We do not reach the question whether we would follow *Ratana* if presented with a fac-

**298**

tually similar case. We find the current case factually distinct from *Ratana* because Marie Purificato did not prove that she derived a significant benefit from only part of the unreported income. As we have already observed, Marie Purificato and her husband failed to establish that they did not acquire substantial undisclosed assets. Under these circumstances, we do not think that *Ratana* is or should be applicable.

### VI.

For the reasons explained above, the decision of the tax court is affirmed.