MARSHA G. SCHULMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schulman v. Commissioner
Docket No. 12099-91
United States Tax Court
T.C. Memo 1994-473; 1994 Tax Ct. Memo LEXIS 481; 68 T.C.M. (CCH) 797; September 28, 1994, Filed *481 Decision will be entered for respondent. For petitioner: Herbert M. Gannet. For respondent: Caroline Ades-Pierri. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 225,337 deficiency in petitioner's 1982 income tax. Respondent also determined additions to tax for 1982 of $ 11,267 for negligence under section 6653(a)(1), 50 percent of the interest due on the underpayment under section 6653(a)(2), and $ 56,334 for substantial understatement of income tax under section 6661. The sole issue for decision is whether petitioner qualifies as an innocent spouse under section 6013(e). We hold that she does not. Respondent concedes that petitioner meets all of the requirements to be an innocent spouse under section 6013(e) except whether she knew or had reason to know of the understatements when she signed the return and whether it is inequitable to hold her liable. Section references are to the Internal Revenue Code in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner resided *482 in Montague, New Jersey, when she filed the petition. Petitioner attended Miami-Dade Junior College in Coral Gables, Florida, and the University of Miami. She majored in elementary education and minored in English. She graduated in 1967. She had no business, financial, or accounting training before or during the year at issue. Petitioner was an elementary school teacher from 1967 to 1969. Petitioner married her first husband in 1968. They had two children: Kevin, born in 1970; and Debra, born in 1971. That marriage ended in divorce in 1972 or 1973. After the divorce, petitioner worked as an interior designer. In 1974, petitioner married Gilbert Schulman (Schulman). Schulman was an investment banker with the brokerage company Bevill, Bresler & Schulman, Inc. (BBS), from 1974 through 1985. Petitioner and Schulman had three children: Lauri, born in 1976; Diana, born in 1983; and Jenny, born in 1984. Petitioner and Schulman remained married at the time of the trial. Petitioner became a homemaker when she married Schulman in 1974. Petitioner helped to decorate the BBS office in Ft. Lauderdale, Florida, and she occasionally helped decorate the office in New Jersey for parties. *483 2. Financial Relationship Between Petitioner and Schulman
Petitioner had no involvement in her family's finances during her marriage to Schulman. Within the first few weeks of the marriage, Schulman gave his secretary responsibility for maintaining his and petitioner's checking accounts and paying their bills. Schulman took bills and other financially related mail that came to their home to his secretary. Petitioner and Schulman had a joint checking account and a savings account. Petitioner also had a separate checking account which she used for incidental expenses such as groceries. Schulman's secretary deposited money in petitioner's account when the balance was low. Petitioner and Schulman did not discuss Schulman's business. She signed financial documents Schulman asked her to sign. Schulman's business associate, Bob Bevill (Bevill), insisted that his associates not involve their wives in BBS business dealings. Schulman became upset when petitioner questioned him about BBS. Schulman's relationship with Bevill was a constant source of problems in petitioner and Schulman's marriage. 3. Petitioner's and Schulman's Tax Returns
Petitioner played no part *484 in preparing her and Schulman's tax returns. Schulman's secretary gathered information for the couple's returns and gave it to their accountant to prepare the returns. Petitioner signed the returns without reviewing them. She did not discuss the returns with Schulman or their accountant. Petitioner and Schulman's accountant signed their 1982 return as the preparer. The increased tax liability determined by respondent for 1982 related to a $ 451,462 deduction claimed for a tax shelter called Hobart Partners. Petitioner and Schulman received a $ 67,764 refund in 1983. Schulman did not file a petition with respect to respondent's notice of deficiency. Petitioner did not know Schulman had invested in Hobart Partners until 1987. Petitioner's and Schulman's joint tax returns from 1979-1984, as originally filed, are summarized as follows: Adjusted
Year
Wages
Gross Income
Total Tax
1979
$ 100,000
$ 36,790 $ 1,116
1980
103,846
(118,685)
0
1981
170,000
56,506 0
1982
574,800
85,068 5
1983
667,000
208,285 20,650
1984
672,300
166,241 4,448
For the years 1979 to 1982, Schulman's wages totaled $ 948,646; their total adjusted gross income was *485 $ 59,679; and their total reported tax liability was $ 1,121. 4. Petitioner and Schulman's Standard of Living
Petitioner and Schulman maintained a high standard of living from 1974 to 1985. They held most of their property jointly. Petitioner and Schulman owned two homes. One home was a small, three-bedroom house in Montague, New Jersey, that Schulman's uncle gave them as a wedding gift in 1975. From 1976 to 1978, petitioner and Schulman built a large, seven-bedroom home on land adjoining the small home. In 1981, petitioner and Schulman moved into a house owned by BBS at 11 Far Brook Drive in Millburn, New Jersey. Petitioner and Schulman lived there until 1983. They lived in a home at 17 Far Brook Drive from 1983 to 1986. Petitioner's children attended private schools from 1981 to 1983. BBS provided petitioner and Schulman with cars and lent them money. Petitioner bought clothing for herself and her family, bought furniture, frequently ate in restaurants, went to beauty salons, and contributed to the support of her parents. Petitioner used credit cards for most of her purchases. Petitioner did not receive any investment property or lavish gifts such as furs, jewelry, *486 or art work in 1982. From 1978 to 1981, petitioner made several trips per year to California and Florida. In 1982, petitioner went to Florida at least seven times. In 1982, petitioner, her children, and Schulman vacationed in Europe for the first time. They spent more than $ 25,000 for this 2-week trip during which they visited the following cities: London, Paris, Nice, Rome, and Zurich. In 1982, petitioner and Schulman attended the Kentucky Derby. Petitioner spent $ 5,225 for an outfit to wear to the Derby. Petitioner and Schulman owned a $ 3,500 interest in a horse that ran in the 1982 Derby. 5. Events Which Occurred After the Year in Issue (1982)
Petitioner and Schulman acquired a warehouse in Montague, New Jersey, in 1983, and a house at 17 Far Brook Drive in 1985. BBS conveyed the property at 17 Far Brook Drive to Schulman in 1985. Schulman conveyed it to petitioner and Schulman as joint owners in 1985. Petitioner conveyed it back to Schulman in 1986. BBS went bankrupt in 1985. In 1986, Schulman was charged with violating securities laws and knowingly filing false income tax returns for the years 1982 to 1985. He was convicted in 1987. He was imprisoned *487 for 3 years beginning in October 1987. All of petitioner and Schulman's real property was transferred or sold pursuant to the BBS bankruptcy proceedings and to pay Schulman's legal expenses and taxes. In 1985, petitioner incorporated a construction company, Sawkill Creek Management, to build and develop residential properties. Sawkill Creek Management built 22 houses. In 1986, petitioner, along with two real estate developers and Schulman's sister, formed a partnership, Hampton Estates, to buy and subdivide land for resale. Hampton Estates developed 33 lots but sold few of them. The Hampton Estates project was not profitable for petitioner, and she sold her interest in it in the late 1980s. In 1985 and 1986, petitioner acquired a brokerage license and worked for a securities firm. Petitioner was unsuccessful selling securities because of the negative publicity surrounding the criminal charges against Schulman, so she stopped selling securities. Petitioner's income was $ 21,833 in 1989 and $ 11,740 in 1990. Petitioner and her children moved into a townhouse owned by Schulman's mother and sister after Schulman's financial troubles began. Petitioner owned the small three-bedroom *488 home in Montague in 1991. She and her family later rented the small home from the person who bought it in foreclosure proceedings in July 1992. OPINION 1. Background: Innocent Spouse Provisions
The issue for decision is whether petitioner qualifies as an innocent spouse under section 6013(e). Spouses who file joint tax returns are jointly and severally liable for tax. Sec. 6013(d)(3). Congress enacted the innocent spouse provisions, section 6013(e), to remedy the "grave injustice" that sometimes resulted from joint and several liability. Bokum v. Commissioner, 992 F.2d 1132, 1134 (11th Cir. 1993), affg. on other grounds 94 T.C. 126 (1990). To qualify as an innocent spouse, a taxpayer must prove that: (a) He or she filed a joint return; (b) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (c) he or she did not know or have reason to know of the substantial understatement when signing the return; and (d) it is inequitable to hold the taxpayer liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1). If the substantial understatement *489 of tax is due to a claim of deduction, credit, or basis, the spouse must also show that the understatement exceeds a specified percentage of that spouse's adjusted gross income for the most recent year ending before the date the deficiency notice was mailed. Sec. 6013(e)(4). A taxpayer does not qualify as an innocent spouse if he or she fails to meet any of the requirements of section 6013(e). Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310. However, in view of the congressional purpose of guarding against injustice to innocent taxpayers, we should not read the innocent spouse exception too narrowly. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). As originally enacted in 1971, the innocent spouse provision applied only if omitted income caused the substantial understatement of income tax. Act of Jan. 12, 1971, Pub. L. 91-679, 84 Stat. 2063 (codified as amended at 26 U.S.C. sec. 6013 *490 (e) (1976)). In response to the concern that the innocent spouse provision was not broad enough to protect all spouses who deserved relief, Congress, in 1984, extended innocent spouse protection to substantial understatements of tax caused by a grossly erroneous deduction, credit, or basis reported on a return. Sec. 6013(e)(2)(B); Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802; [1]Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101. Respondent concedes that petitioner filed a joint return for 1982, and that there is a substantial understatement of income tax attributable to grossly erroneous items of her spouse on that return. Sec. 6013(e)(1)(A) and (B). Respondent also concedes *491 that the preadjustment year requirement is satisfied. Sec. 6013(e)(4). 2. Inequitable to Hold Petitioner Liable
The taxpayer claiming eligibility as an innocent spouse must prove that, taking into account all the facts and circumstances, it is inequitable for him or her to be held liable. Sec. 6013(e)(1)(D). The statute by its terms no longer requires that the purported innocent spouse receive a significant benefit, but it continues to be a factor. Purificato v. Commissioner, 9 F.3d 290, 293 (3d Cir. 1993), affg. T.C. Memo. 1992-580; Estate of Krock v. Commissioner, 93 T.C. 672, 678 (1989). Normal support, or support similar to that enjoyed in earlier years, is not considered to be a significant benefit. Sanders v. United States, supra at 168; Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Belk v. Commissioner, 93 T.C. 434, 440 (1989). Lavish or unusual support is evidence of a significant benefit, even if it is received after the year in issue. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), *492 affg. T.C. Memo. 1992-228. Petitioner contends that it would be inequitable to hold her liable for the understatement because she claims that she did not receive a significant benefit from it. We disagree. Petitioner enjoyed the benefits of the understatement that resulted from the Hobart Partners deduction. Petitioner and Schulman lived lavishly. They sent petitioner's children to private schools. They took a 2-week European vacation which cost more than $ 25,000, and they went to the Kentucky Derby in 1982, for which petitioner spent $ 5,225 for clothes. Petitioner and Schulman had a $ 5 tax liability in 1982. As a result of the understatement, they received a refund of $ 67,764 in 1983. We believe that the understatement enabled petitioner to maintain a standard of living that she would not have enjoyed otherwise. Hayman v. Commissioner, supra at 1263; Scarafile v. Commissioner, T.C. Memo. 1991-512. Petitioner asserts that there is no evidence that she benefitted from the refund. However, Schulman testified that the refund check was probably deposited in their joint bank account. *493 All indications are that petitioner and Schulman shared most of their assets and financial resources jointly. Petitioner has not shown that she and Schulman deviated from their pattern of sharing everything. Thus, we conclude that petitioner shared in the refund. Petitioner relies on Hinds v. Commissioner, T.C. Memo. 1988-426, and Bell v. Commissioner, T.C. Memo. 1989-107, to support her argument that it would be inequitable to hold her liable for the understatement. These cases are distinguishable from this case. In Hinds and Bell we held that the taxpayers were entitled to innocent spouse relief because their standard of living did not exceed normal support. Similarly, in Pietromonaco v. Commissioner, 3 F.3d 1342 (9th Cir. 1993), revg. T.C. Memo. 1991-361, the United States Court of Appeals for the Ninth Circuit held that it was inequitable to deny innocent spouse relief to a taxpayer whose lifestyle during the year in issue was exactly the same as in prior years. Pietromonaco v. Commissioner, supra at 1348. In *494 this case, petitioner lived lavishly, her standard of living increased in 1982, and she benefitted from the understatement. Petitioner asserts that Hayman v. Commissioner, supra, and Nicholson v. Commissioner, T.C. Memo. 1993-183, on which respondent relies, do not support a finding that it is not inequitable to hold her liable. We disagree. Petitioner argues that Nicholson is not controlling because the taxpayer who was denied innocent spouse relief received the refund check attributable to the understatement. We are not persuaded by petitioner's attempt to distinguish Nicholson from the present case. Whether or not petitioner personally received the 1982 refund check, we have found that she benefitted from the understatement and the refund. Petitioner asserts that Hayman is distinguishable because the taxpayer who was denied innocent spouse relief was involved in the tax shelter that led to the understatement and offered no evidence to show that she did not benefit from the understatement. We are not convinced that petitioner's lack of involvement in Hobart Partners makes it inequitable to hold *495 her liable for the understatement in light of the other facts and circumstances present here. Further, we have found that petitioner significantly benefitted from the understatement. Petitioner fully shared in Schulman's earnings and the tax savings that Hobart Partners provided. Petitioner asserts that she and Schulman were prevented by her poor health from going to Europe before 1982. Although we sympathize with her health difficulties, we do not believe that her health prevented her from going to Europe before 1982 or that these facts bear on whether it would be inequitable to hold her liable for the understatement. Purificato v. Commissioner, 9 F.3d at 294. We also note that petitioner and Schulman were still married at the time of trial. See id. (citing S. Rept. No. 91-1537, at 3). We hold that it is not inequitable to deny innocent spouse relief to petitioner and that she is not entitled to innocent spouse relief under section 6013(e)(1)(D). Thus, it is not necessary for us to consider whether petitioner knew or had reason to know of the understatement under section 6013(e)(1)(C). To reflect the foregoing, Decision will be entered *496 for respondent. Footnotes
1. The 1984 amendments to sec. 6013(e)↩ apply retroactively to all open tax years. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(c)(1), 98 Stat. 494, 803. Thus, the 1984 statute applies here.