JOSE A. ALVAREZ AND WANDA ALVAREZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOSE A. ALVAREZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alvarez v. Commissioner
Docket Nos. 2849-91, 22719-93.
United States Tax Court
T.C. Memo 1995-414; 1995 Tax Ct. Memo LEXIS 416; 70 T.C.M. (CCH) 518; August 24, 1995, Filed *416 Decisions will be entered under Rule 155. H was arrested in 1985 and charged with conspiracy to distribute cocaine. When H was arrested, Ps possessed $ 551,000 in cash and $ 92,772 in cash equivalents. R used the net worth method to determine deficiencies in, and additions to, Ps' 1982 through 1984 Federal income taxes. R used the bank deposits method to determine deficiencies in, and additions to, H's 1985 through 1987 and 1989 Federal income taxes. Ps allege that R's determinations were arbitrary and capricious, and that the source of the income was a gift. W seeks innocent spouse relief under sec. 6013(e), I.R.C., for her 1982 through 1984 taxable years. Held: R's determination was not arbitrary and capricious, and Ps failed to prove that the source of the income was a gift. Held, further, R's determinations of additions to tax for fraud, substantial understatement, delinquent filing of tax returns, and negligence are sustained. Held, further, Ps are liable for self-employment tax. Held, further, W is not entitled to innocent spouse relief for any year in issue. Howard B. Brownstein, for petitioners. Robert A. Fee, for respondent. LARO, Judge LARO
MEMORANDUM *417 FINDINGS OF FACT AND OPINION LARO, Judge: Two dockets are consolidated herein: (1) Jose A. Alvarez and Wanda Alvarez, docket No. 2849-91, and (2) Jose A. Alvarez, docket No. 22719-93. [1] *418 See Rule 141(a). [2] Petitioners petitioned the Court to redetermine respondent's determinations with respect to their 1982 through 1984 taxable years. Mr. Alvarez petitioned the Court to redetermine respondent's determinations with respect to his 1985 through 1987 and 1989 taxable years. Respondent determined the following income tax deficiencies and additions to tax: Jose A. and Wanda Alvarez, Docket No. 2849-91
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 27,519
$ 13,760
[1]
$ 6,880
1983
92,663
46,332
[2]
23,166
1984
395,696
197,848
[3]
98,924
Jose A. Alvarez, Docket No. 22719-93
Additions to Tax
Sec. 6653
Year
Deficiency
Sec.6653(b)(1)
(b) (2)
Sec.6651(a)(1)
1985
$ 472,681
$ 236,431
[1]
-- 1986
10,752
-- --
$ 2,704
1987
10,425
-- --
2,622
1989
8,440
-- --
2,205
Additions to Tax
Year
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
Sec. 6662(a)
1985
--
--
$ 118,170
-- 1986
$ 574
[2]
2,688
-- 1987
553
[3]
2,606
-- 1989
--
--
-- $ 1,688
Following concessions, we must decide: 1. Whether respondent arbitrarily and capriciously issued the notices of deficiency. We hold she did not. 2. Whether petitioners are liable for additions to their 1982 through 1984 taxes for fraud, see sec. 6653(b)(1) and (2), and whether Mr. Alvarez is *419 liable for the same addition to his 1985 tax. We hold they are, and he is. 3. Whether petitioners are liable for additions to their 1982 through 1984 taxes for substantial understatement, see sec. 6661, and whether Mr. Alvarez is liable for the same addition to his 1985 and 1986 taxes. [3] We hold they are, and he is. 4. Whether Mr. Alvarez is liable for additions to his 1986, 1987, and 1989 taxes for untimely filing of tax returns. See sec. 6651(a)(1). We hold he is. 5. Whether Mr. Alvarez is liable for additions to his 1986, 1987, and 1989 taxes for negligence. See sec. 6653(a)(1)(A) and (B) for 1986 and 1987; sec. 6662(a) and (b)(1) for 1989. We hold he is. 6. Whether petitioners are liable for self-employment taxes, see sec. 1401, for their 1982 through 1984 taxable years, and whether Mr. Alvarez is liable for the same tax for his 1985 through 1987 and 1989 taxable years. We hold they are, and he is. *420 7. Whether Mrs. Alvarez is an innocent spouse, see sec. 6013(e), for her 1982 through 1984 taxable years. We hold she is not. FINDINGS OF FACT [4]
Petitioners resided in Bayville, New Jersey, when they petitioned the Court in docket No. 2849-91. Mr. Alvarez resided in Coral Gables, Florida, when he petitioned the Court in docket No. 22719-93. For each of their 1982 through 1984 taxable years, petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, using the status of "Married filing joint return". For each of his 1985 through 1987 and 1989 taxable years, Mr. Alvarez untimely filed a Form 1040 using the status of "Married filing separate return". Drug-Dealing Activities Involving Mr. Alvarez
Mr. Alvarez was the subject of a criminal investigation conducted by a multiagency task force (Task Force). The Task Force's investigation culminated on October 3, 1985, with the arrest of Mr. Alvarez, Adolph V. *421 Carbone, and approximately 66 other suspects. Mr. Alvarez was charged with conspiracy to distribute cocaine. Mr. Alvarez was later acquitted of these charges. Mr. Carbone was Mr. Alvarez' client. During the 2-month period ending on August 31, 1985, Mr. Carbone purchased 3 or 4 kilograms of high-quality cocaine from Mr. Alvarez at a cost ranging from $ 40,000 to $ 43,000 per kilo. Mr. Alvarez "fronted" (consigned) the kilos to Mr. Carbone, and Mr. Alvarez received cash payments for each front shortly afterwards. On one occasion, Mr. Carbone paid $ 43,000 to Mr. Alvarez at his residence in Bayville, New Jersey. Mrs. Alvarez was present at the residence when the cash payment was made. Mr. Alvarez was arrested at his residence. A search of his residence at that time uncovered loaded weapons with at least nine rounds of ammunition, approximately 1 ounce of marijuana, an envelope containing $ 4,000 in cash, another envelope containing two safe deposit box keys, and a notebook ledger. The ledger contained numerous handwritten entries indicating that the aggregate value of assets held by petitioners in accounts, investments, and cash was $ 1,052,166. On October 4, 1985, law enforcement *422 authorities used the keys found at Mr. Alvarez' residence to search the two safe deposit boxes. In the boxes, the authorities found: (1) $ 551,000 in cash and (2) bank passbooks and certificates of deposit totaling $ 92,772. On the same day, Mrs. Alvarez removed the contents from three safe deposit boxes of petitioners, [5] one in Newark, New Jersey, and the other two in Jersey City, New Jersey. In order to gain entry to the third box, Mrs. Alvarez made misrepresentations to bank officials, who drilled the box open at her request. When Government officials later searched the three boxes, the boxes were empty. On April 13, 1989, a Federal grand jury indicted Mr. Alvarez on three counts of fraud under section 7206(1), for willfully making false statements in connection with petitioners' 1982 through 1984 joint income tax returns. *423 On November 22, 1989, Mr. Alvarez pleaded guilty to one count of making a false statement on the 1982 joint return in violation of section 7207. Respondent's Determinations of Deficiencies
Petitioners failed to maintain adequate books and records during the years in issue. Respondent reconstructed Mr. Alvarez' 1985 through 1987 and 1989 taxable income through the bank deposits method. She reconstructed petitioners' 1982 through 1984 taxable income through the net-worth method. [6] In determining petitioners' net worth for each of the relevant periods, respondent relied on the ledger seized from petitioners' residence during Mr. Alvarez' arrest. *424 This ledger, which was prepared by Mr. Alvarez, is reproduced in the appendix. The left-hand column of the table shows Mr. Alvarez' handwritten entries in the ledger. [7] The four columns to the right show corresponding accounts and balances. During her examination, respondent traced each ledger entry to specific accounts and investments as of specific dates by using documents of petitioners that included bank statements, deposit tickets, and billing statements. Respondent concluded that the first two entries in the ledger, "271.0 CASA" and "313.0 MIMA", reflected cash on hand for the 1984 taxable year. Mr. Alvarez added those figures together with the other ledger entries in arriving at a personal net worth of $ 1,052,166. Respondent later traced $ 580,000 of this $ 584,000 cash on hand ($ 271,000 CASA + $ 313,000 MIMA) to the $ 551,000 seized from safe deposit boxes after Mr. Alvarez' arrest, and $ 29,000 in cash deposits that petitioners made at various banks from February 8 to March 14, 1985. OPINION 1. Respondent's *425 Issuance of the Notices of Deficiency
We must first decide whether respondent's issuance of the notices of deficiency was arbitrary and capricious. Petitioners allege that it was. In so alleging, petitioners attack the presumption of correctness that generally attaches to every deficiency notice. Rule 142(a); United States v. Janis, 428 U.S. 433, 440-441 (1976); Welch v. Helvering, 290 U.S. 111, 115 (1933); Baird v. Commissioner, 438 F.2d 490, 492 (3d Cir. 1970), vacating T.C. Memo. 1969-67. Generally, taxpayers bear the burden to produce evidence to rebut the presumption. United States v. Janis, supra at 441; Gerardo v. Commissioner, 552 F.2d 549, 552 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341. The Court will usually not go behind a notice of deficiency to examine the evidence that the Commissioner used to make her determination. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Jackson v. Commissioner, 73 T.C. 394, 400 (1979); *426 Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). A notable exception to this rule has been recognized, however, in certain circumstances in unreported income cases where the Commissioner fails to present predicate evidence connecting the taxpayer to an income-producing activity. Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986), vacating T.C. Memo. 1985-101; Gerardo v. Commissioner, supra at 554; Dellacroce v. Commissioner, supra at 280; Jackson v. Commissioner, supra at 401. Such an exception has been deemed warranted in light of the difficulty in proving nonreceipt of income. Anastasato v. Commissioner, supra at 887; Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980). In arguing that respondent's notice of deficiency is arbitrary and capricious, petitioners rely upon Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), *427 revg. 67 T.C. 672 (1977); Llorente v. Commissioner, supra at 152; and Dellacroce v. Commissioner, supra at 280. Petitioners argue that their tax liability is zero, unless the Court believes the testimony of Mr. Carbone, in which case, petitioners acknowledge, they could be held liable for the tax on the dollar amount in drug sales that Mr. Carbone testified were made to him by Mr. Alvarez. We begin our analysis by noting that the case at issue is readily distinguishable from the Weimerskirch case and similar cases. The instant record contains ample evidentiary support for respondent's determinations. In light of petitioners' failure to maintain adequate books and records, as required by section 6001, respondent's use of the net-worth method as an indirect reconstruction of petitioners' income was warranted. Holland v. United States, 348 U.S. 121 (1954); Goodman v. Commissioner, 761 F.2d 1522, 1524 (11th Cir. 1985), affg. an Order of the Court; Cupp v. Commissioner, 65 T.C. 68, 82 (1975), affd. *428 without published opinion 559 F.2d 1207 (3d Cir. 1977). From our examination of respondent's net-worth calculations, we also find that these calculations comport with the requirements of Holland v. United States, supra.Respondent made adequate opening cash-on-hand computations, established a likely source of income, and investigated relevant leads of nontaxable sources. Id. at 130-131. Respondent's net worth calculations were based on substantial testimony and documentary evidence, and were shown to have been carefully matched with entries in petitioners' net-worth ledger. [8] Petitioners also stipulated the accuracy of respondent's tracing of the ledger entries to account balances in specific banks, and to the specific assets, held on December 31, 1984. *429 We therefore reject petitioners' attempt to shift to respondent the burden of coming forward with evidence linking petitioners to an income-producing activity. Gambina v. Commissioner, 91 T.C. 826, 827 n.3 (1988); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986). Where, as here, a taxpayer possesses cash and other assets that enter into the Commissioner's reconstruction of income, the presumption that the determinations in the notice of deficiency are correct continues in full force, and the taxpayer bears the burden of proving it erroneous. Parks v. Commissioner, 94 T.C. 654, 658-659 (1990); Gambina v. Commissioner, supra at 827 n.3; Schad v. Commissioner, 87 T.C. 609, 620 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); Tokarski v. Commissioner, supra at 76; cf. De Cavalcante v. Commissioner, 620 F.2d 23, 24 n.3 (3d Cir. 1980), affg. T.C. Memo. 1978-432. Similarly the deficiencies *430 in Mr. Alvarez' income that respondent computed under the bank-deposits method are prima facie valid and entitled to the presumption. Tokarski v. Commissioner, supra at 77. Contrary to petitioners' argument, we find in any event that petitioners are linked to the $ 584,000 which was reflected in the first two entries on the appendix and was used in the net-worth computation of their 1984 taxable income. In addition to the testimony of Mr. Carbone, which we find to be credible, respondent presented petitioners' handwritten notebook ledger, as well as other evidence tracing those amounts to specific accounts, which provides sufficient probative and convincing evidence that petitioners possessed the $ 584,000 in cash in their 1984 taxable year. We conclude that respondent is entitled to the presumption of correctness with respect to the notices of deficiency, and petitioners retain the burden of proving respondent's determinations wrong. Sullivan v. United States, 618 F.2d 1001, 1008 (3d Cir. 1980). We now turn to whether petitioners satisfied their burden of proving respondent's determinations wrong. In an attempt to *431 meet their burden, petitioners rely primarily on Mr. Alvarez' testimony at trial. Mr. Alvarez testified that Roberto Uribe, a Colombian citizen who was a personal friend and business associate, gave petitioners the $ 551,000 in cash and $ 92,772 in cash equivalents discovered by law enforcement authorities in petitioners' safe deposit boxes after Mr. Alvarez' arrest. Mr. Alvarez testified that, from 1981 to 1984, Mr. Uribe gave petitioners large sums of money to keep at their residence, and that they hid these funds in a trap door compartment underneath a closet in their apartment in Union City, New Jersey. Mr. Alvarez also testified that petitioners initially held these funds for use in a joint business relationship between him and Mr. Uribe. Mr. Alvarez' testimony was unsupported by documentary evidence or by the testimony of another witness. We find that his testimony lacks credibility. Based on our review of the entire record herein, we find petitioners' assertion that the source of the unreported income was a gift to be unpersuasive. We find that petitioners contrived a gift scenario to attempt to explain their possession of large amounts of cash and cash equivalents. We hold *432 that petitioners failed to prove that their cash and cash equivalents were received from a nontaxable source. We sustain the income tax deficiencies with one modification. Respondent conceded that she included (as a protective measure) the amount of assets seized from Mr. Alvarez' residence in calculating the income tax deficiencies for both 1984 and 1985. Given this concession, and due to our holding that the seized assets were includable in petitioners' 1984 taxable income, the deficiency for 1985 will be reduced accordingly, to prevent double counting of income. 2. Additions to Tax for Fraud
Respondent also determined additions to tax for fraud for petitioners' 1982 through 1984 taxable years and for Mr. Alvarez' 1985 taxable year. Respondent must prove her determinations of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud requires a showing that the taxpayer intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). For purposes of section 6653(b)(1), respondent must prove that: *433 (1) Petitioners (with respect to 1985, Mr. Alvarez) underpaid their taxes for the relevant years, [9] and (2) some part of each underpayment was due to fraud. For purposes of section 6653(b)(2), respondent must also prove the portion of the underpayments attributable to fraud. Sec. 6653(b)(2); Cooney v. Commissioner, T.C. Memo. 1994-50. Based on our review of the entire record, we hold that respondent has met her burden of proving the first prong of section 6653(b)(1); i.e., underpayments of tax. In addition to the considerable evidence presented by respondent in support of her deficiency determinations, respondent's reconstruction of petitioners' 1982 through 1984 taxable income under the net-worth *434 method, and Mr. Alvarez' 1985 taxable income under the bank-deposits method, clearly and convincingly substantiates her position of an underpayment in each year. [10] Petitioners also stipulated the accuracy of the lion's share of account balances and figures used in respondent's reconstruction of their income. *435 Turning to the second prong of section 6653(b)(1), i.e., the presence of fraud, the existence of fraud is a question of fact. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed; it must be established by independent evidence that establishes a fraudulent intent on the taxpayer's part. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). For example, an intent to conceal or mislead may be inferred from a pattern of conduct, Spies v. United States, supra at 499, or from a taxpayer's entire course of conduct, Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). *436 Likewise, a pattern showing a consistent underreporting of income, when accompanied by circumstances evidencing an intent to conceal, may justify a strong inference of fraud. Parks v. Commissioner, 94 T.C. at 664. We often rely on certain indicia of fraud in deciding the existence of fraud. The presence of several indicia is persuasive circumstantial evidence of fraud. Beaver v. Commissioner, 55 T.C. 85, 93 (1970). The "badges of fraud" include: (1) The filing of false documents; (2) understatement of income; (3) maintenance of inadequate records; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) engaging in an illegal activity; (8) attempting to conceal such activity; (9) dealing in cash; and (10) failing to make estimated tax payments. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). Based on our review of the record at hand, we conclude that respondent has *437 met her burden of proving fraud for each of the relevant years. Petitioners' (and, with respect to 1985, Mr. Alvarez') clear pattern of underreporting taxable income from 1982 through 1985, coupled with the lack of recordkeeping and concealment of cash assets, leads to a particularly strong inference of fraud. Parks v. Commissioner, supra at 664. In addition, Mr. Alvarez' transactions involved large amounts of cash, and petitioners attempted to conceal substantial assets from the Government. We also consider it significant that Mr. Alvarez pleaded guilty to making a false statement on his 1982 tax return in violation of section 7207. Although this conviction does not, in and of itself, establish fraudulent intent, we consider the crime evidence of Mr. Alvarez' propensity to defraud. [11]Petzoldt v. Commissioner, supra at 701-702. *438 For the foregoing reasons, we hold that petitioners are liable for the additions to their 1982 through 1984 taxable years determined by respondent under section 6653(b)(1), and that Mr. Alvarez is liable for the same addition with respect to his 1985 taxable year. In so holding, we reject petitioners' argument that the period of limitations on assessment and collection for the 1982 through 1984 taxable years has expired. See sec. 6501(c)(1). We now move to respondent's additions to tax under section 6653(b)(2). Section 6653(b)(2) imposes an addition to tax equal to 50 percent of the interest payable on the understatement. Section 6653(b)(2) requires respondent to prove the portion of the deficiency attributable to fraud. In accordance with our discussion above, we find that the entire amount of each of the underpayments for the 1982 through 1985 taxable years was due to fraud, and we so hold. 3. Additions to Tax for Substantial Understatement
Respondent determined that petitioners are liable for additions to their 1982 through 1984 taxes for substantial understatement of income tax under section 6661, and that Mr. Alvarez is liable for the same addition to his 1985 through *439 1987 taxes. Because respondent has conceded her determination with respect to 1987, we concern ourselves only with the other years. For returns due before January 1, 1990, a taxpayer whose return contains a substantial understatement of income tax may incur an addition to tax equal to 25 percent of the underpayment attributable to the understatement. Sec. 6661; Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of: (a) 10 percent of the tax required to be reported on the return or (b) $ 5,000. Sec. 6661(b)(1)(A)(i) and (ii). An understatement is reduced to the extent that: (1) The position taken resulting in the understatement was supported by substantial authority, or (2) the taxpayer adequately disclosed in the return, or in an attachment to the return, relevant facts relating to his or her position. Sec. 6661(b)(2)(B)(i) and (ii). The understatements on petitioners' 1982 through 1984 tax returns are clearly "substantial" under this standard. The record does not support an exception to these additions for any of the years in issue. We sustain these additions to tax against petitioners *440 for their 1982 through 1984 taxable years. With respect to Mr. Alvarez' 1985 and 1986 taxable years, we also sustain respondent's determination for: (1) The 1986 taxable year and (2) the 1985 taxable year, to the extent that the Rule 155 computation (which is necessary, in part, to "remove" the 1984 income from Mr. Alvarez' 1985 taxable year) reveals a substantial understatement for that year. 4. Additions to Tax for Untimely Filings
Respondent determined an addition to tax under section 6651(a)(1), alleging that Mr. Alvarez failed to file timely his 1986, 1987, and 1989 tax returns. Given that Mr. Alvarez filed these returns untimely, he may avoid this addition to tax only if he proves that his failure to file timely was: (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file timely a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and, nevertheless, was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, *441 intentional failure or reckless indifference. United States v. Boyle, supra at 245. Mr. Alvarez presented no evidence on this issue. We sustain respondent's determination under section 6651(a) for all relevant years. 5. Additions to Tax for Negligence/Accuracy-Related Penalty
Respondent determined additions to tax for negligence under section 6653(a)(1)(A) and (B) for Mr. Alvarez' 1986 and 1987 taxable years, and an accuracy-related penalty under section 6662(a) and (b)(1) for his 1989 taxable year. [12] Respondent determined that Mr. Alvarez' underpayment of income taxes in each year was due to negligence or intentional disregard of rules or regulations. For 1986 and 1987, section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence, and section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. For 1989, section 6662(a) imposes a penalty equal to 20 percent of the underpayment attributable to negligence. *442 Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). For purposes of section 6662(a), "negligence" includes a failure to make a reasonable attempt to comply with the Internal Revenue Code, and "disregard" includes careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.
Mr. Alvarez bears the burden of proving these determinations wrong. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860 (1982). Mr. Alvarez presented no evidence on this issue. We sustain respondent's determinations under sections 6653(a)(1) and (2) and 6662(a) for all relevant years. 6. Self-Employment Tax
Respondent determined a deficiency in self-employment tax with respect to each year in issue. A self-employment tax is imposed on income in excess of $ 400 derived by an individual from his or her trade or business. Secs. 1401 and 1402(b) and (c). The burden is on petitioners to prove respondent's determination wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *443 They presented no evidence on this issue. We sustain respondent's determinations with respect to it. 7. Innocent Spouse Relief
A husband and wife filing a joint return for a year generally are jointly and severally liable for any tax due with respect to that year. Sec. 6013(d)(3). Section 6013(e), however, provides an exception under which a spouse is relieved of his or her liability when: (1) A joint return was filed for the year in question; (2) there was a substantial understatement of tax attributable to a grossly erroneous item of the other spouse; (3) in signing the return, the "innocent spouse" neither knew, nor had any reason to know, of the substantial tax understatement; and (4) taking into account all facts and circumstances, it is inequitable to hold the claimed "innocent spouse" liable for the deficiency attributable to the tax understatement. Sec. 6013(e)(1). The spouse claiming innocent spouse relief, in this case Mrs. Alvarez, must prove each of these four prongs. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Because the parties have not contested *444 the first two prongs, we limit our discussion to the last two prongs. In deciding whether it would be inequitable to hold Mrs. Alvarez jointly liable for the deficiencies in petitioners' 1982 through 1984 income taxes, we consider whether she significantly benefited from the underpayments of tax. Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). Mrs. Alvarez argues that it would be inequitable to hold her liable for the deficiencies because she received no significant benefit from the tax understatements. We disagree. Under the facts at hand, Mrs. Alvarez' acquisition of savings and other investment assets is a "significant benefit" to preclude innocent spouse relief. Purificato v. Commissioner, 9 F.3d 290, 294-295 (3d Cir. 1993), affg. T.C. Memo. 1992-580. In the Purificato case, the wives of two brothers sought innocent spouse relief from deficiencies due to their husbands' understatement of income. This Court concluded that neither spouse proved it would be inequitable to hold her liable for her husband's deficiency because each couple had acquired substantial joint savings and *445 other investment assets during the years in issue there. Upon appeal, the Court of Appeals for the Third Circuit agreed. In affirming this Court, the Court of Appeals rejected the wives' argument that the acquisition of joint savings or other investment assets could not, as a matter of law, constitute a significant benefit because the savings and assets did not relate to present consumption. The Court of Appeals held that the wives' position was unsupportable, observing that in the context of an income tax, i.e., a tax on income not consumption, such an argument "simply does not make sense." Id. at 294. The Court of Appeals held that each wife received a significant benefit and, accordingly, denied innocent spouse relief. Id.
Mrs. Alvarez derived a similar benefit during her 1982 through 1984 taxable years. In 1982 and 1983, Mrs. Alvarez benefited from a $ 35,000 increase in joint investment assets and savings. In 1984, petitioners' joint investments and accounts increased by at least another $ 48,000. Mrs. Alvarez also received the benefit of the $ 79,000 cash downpayment on petitioners' purchase of their Bayville residence in 1984. Accordingly, *446 we find that Mrs. Alvarez failed to prove that it would be inequitable to hold her liable for the tax understatements. Mrs. Alvarez also failed to prove that she neither knew, nor had reason to know, of the substantial understatements. Sec. 6013(e)(1)(C). Mrs. Alvarez testified that she did not know of her husband's business affairs. Mrs. Alvarez testified that she witnessed Mr. Uribe showing Mr. Alvarez a briefcase full of cash, and that Mr. Uribe delivered money to her husband on several occasions. Mrs. Alvarez also testified that she knew about (and used for personal purposes) the money stashed below the trap door. We find that this testimony (the only evidence offered to prove her status as an innocent spouse) strains credulity. We find that Mrs. Alvarez knew of or should have known of the unreported income. We further note that Mrs. Alvarez' credibility before the Court was diminished by her removal of the contents of three of petitioners' safe deposit boxes the day after Mr. Alvarez' arrest. Her conduct in that respect makes us the more skeptical of her story that she knew nothing of the unreported income. We hold that Mrs. Alvarez failed to satisfy the elements of section *447 6013(e)(1)(B) and (C), and that she is not entitled to "innocent spouse" relief for any of the relevant years. To reflect the foregoing, Decisions will be entered under Rule 155. APPENDIX Ledger
Date of
Entries
Balance
Balance
Location
Explanation
271.0 CASA
$ 271,000.00
313.0 MIMA
313,000.00
185.0 S.C.
185,000.00
12/31/84
cash in home  51.0 S.D. 51,000.00
12/31/84
cash in home  110.0 S.D.
110,000.00
12/31/84
cash in home  Trust Co. of  Savings Acct. No.
4.0 S. 4,000.00
12/84
New Jersey  15-500783
Trust Co. of  24.124 S.
24,196.89
08/21/84
New Jersey  5-52919
United Jersey  Cert. of Dep. No.
13.794 C.D.
13,794.49
08/22/84
Bank  020237900002441
United Jersey  Savings Acct. No.
2.217 S. 2,217.76
12/84
Bank  773-00688-5
United Jersey  Savings Acct. in
2.000 S. 2,000.00
Bank  Fairfield branch
Provident  Savings Acct. No.
8.527 S. 8,527.74
06/19/84
Savings  05-28524
Trust Co. of  Cert. of Dep. No.
30.607 C.D.
30,607.09
07/18/84
New Jersey   51943
Cert. of Dep. in
4.000 Trust Co. of  daughter's name No.
AMADA C.D.
4,000.00
10/04/84
New Jersey   15-501485
Cert. of Dep. in
4.000 AMADA Banco Popular  daughter's name
P.C.D.
4,000.00
11/01/84
45387
Acct. jointly held
by W. Alvarez and M.
6.000 WANDA Castellano
6,000.00
12/31/84
Loan to brother-in-
6.000 RICH 6,000.00
12/31/84
law
3.879 CH. Checking Acct. No.
PUERTO
3,879.80
11/29/84
CitiBank  000594-836-3
3.613 S. Savings Acct. No.
PUERTO
3,613.85
11/29/84
CitiBank  000594-836-3
6.153 S. Banco Popular  Savings Acct. No.
PUERTO
6,153.75
12/07/84
132-74780-4
3.252 CH. Banco Popular  Checking Acct. No.
PUERTO
3,252.13
12/07/84
132-74780-4
Total assets as of
1052166.0
1,052,166.00
Dec. 31, 1984
*448 Footnotes
1. We separately refer to Jose A. Alvarez and Wanda Alvarez as Mr. Alvarez and Mrs. Alvarez, respectively, and collectively refer to them as petitioners.↩
2. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue.↩
1. 50 percent of the interest due on $ 27,519.↩
2. 50 percent of the interest due on $ 92,663.↩
3. 50 percent of the interest due on $ 395,696.↩
1. 50 percent of the interest due on $ 472,681.↩
2. 50 percent of the interest due on $ 10,752.↩
3. 50 percent of the interest due on $ 10,425.↩
3. With respect to this addition, respondent has conceded her determination for Mr. Alvarez' 1987 taxable year.↩
4. The stipulations of fact and attached exhibits are incorporated herein by this reference.↩
5. Shortly before, the Task Force's commanding officer had informed Mrs. Alvarez that the authorities would seize petitioners' assets if Mr. Alvarez did not cooperate with the investigation.↩
6. The net-worth method involves ascertaining the taxpayer's net worth at the beginning and end of a tax period and determining how much of any increase is not attributable to income reported in the return. Petzoldt v. Commissioner, 92 T.C. 661, 694 (1989); Tokarski v. Commissioner, 87 T.C. 74, 77↩ (1986).
7. Petitioners concede that the entries in the ledger, with the exception of the first two items, represent their net worth on Dec. 31, 1984. Petitioners also concede that items 3 through 5, totaling $ 346,000, represent cash that they possessed in their Bayville, New Jersey, residence when Mr. Alvarez drafted the ledger.↩
8. Mr. Alvarez testified that the "271.0 CASA" and "313.0 MIMA" entries in the ledger were not part of petitioners' assets when the ledger was drafted. He testified that these items were merely cost projections associated with petitioners' plans to build a home for themselves, "CASA," and a home for Mrs. Alvarez' mother, "MIMA." We find Mr. Alvarez' testimony on this point to be patently incredible. Mr. Alvarez himself included the two ledger entries in his net worth calculation of $ 1,052,166. The inclusion of the first two items as a positive addition to net worth directly contradicts Mr. Alvarez' implausible and self-serving testimony. Gerardo v. Commissioner, 552 F.2d 549, 553 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341; Jackson v. Commissioner, 73 T.C. 394, 400↩ (1979).
9. Given the fact that respondent bears the burden of proof, we will not bootstrap a finding of an underpayment upon petitioners and Mr. Alvarez' failure to prove respondent's deficiency determinations erroneous. Parks v. Commissioner, 94 T.C. 654, 660-661↩ (1990).
10. Respondent's bank-deposits analysis for Mr. Alvarez' 1985 taxable year included her determination that Mrs. Alvarez was merely the nominee, and Mr. Alvarez the owner, of a certain bank account with a balance of approximately $ 1,404. The owner of property for tax purposes is a question of fact. Schoenberg v. Commissioner, 302 F.2d 416, 420 (8th Cir. 1962), affg. T.C. Memo. 1961-235; Hang v. Commissioner, 95 T.C. 74, 80 (1990). Although this bank account was in Mrs. Alvarez' name, we find that the record clearly supports respondent's determination that Mr. Alvarez owned this account. With respect to any testimony to the contrary elicited from Mrs. Alvarez, we are not required, and are disinclined, to accept Mrs. Alvarez' unsupported testimony as the truth. Gerardo v. Commissioner, 552 F.2d 549, 553 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341; Tokarski v. Commissioner, 87 T.C. 74, 77↩ (1986).
11. We also find relevant the facts that Mrs. Alvarez witnessed Mr. Uribe delivering large sums of cash to her husband, and that she knew about the large sum of money hidden in their apartment.↩
12. Respondent also determined that the accuracy-related penalty for substantial understatement of income tax applies to Mr. Alvarez' 1989 taxable year. Sec. 6662(a) and (b)(2). We need not, and do not, address this determination because we sustain respondent's determination under sec. 6662(a) and (b)(1)↩.