T.C. Memo. 1996-268


UNITED STATES TAX COURT


WILLIAM C. AND ELAINE GASKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PASQUALE T. QUINN AND SABINA A. QUINN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8509-91, 8539-91.          Filed June 11, 1996.


<u>James J. Riley</u>, for petitioners.

<u>Keith L. Gorman</u>, for respondent.


MEMORANDUM OPINION

PARKER, <u>Judge</u>:  This consolidated case is before the Court
on petitioners' motion for litigation costs, pursuant to section
7430 and Rules 230 through 232.  Unless otherwise indicated, all
section references are to the Internal Revenue Code in effect for

the relevant taxable years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties submitted memoranda and affidavits in support of their positions. Neither party requested a hearing. We decide the motion based on the pleadings, petitioners' motion for litigation costs, respondent's objection to that motion, the supporting memoranda and affidavits, and the record in these cases.

The primary issues in the underlying opinion, Gaskins v. Commissioner, T.C. Memo. 1995-511, filed October 26, 1995, were whether petitioner Elaine Gaskins and petitioner Sabina A. Quinn were entitled to relief as innocent spouses under section 6013(e). We held that both petitioner wives were entitled to such relief. However, the path to that result was long and winding, with unnecessary obstacles and delays along the way.

Background

On February 8, 1991, respondent mailed notices of deficiency to petitioners William C. and Elaine Gaskins (the Gaskins) and Pasquale T. and Sabina A. Quinn (the Quinns), determining deficiencies in income tax for the taxable years 1979, 1980, and 1981, and determining, against petitioner husbands, additions to tax for fraud for those years. On May 6, 1991, the Gaskins and the Quinns, through their attorney, James J. Riley (Attorney Riley), filed their respective petitions with this Court. Those petitions assigned as errors the determination of unreported

income and fraud on the part of the petitioner husbands for each year.[1] Rule 34(b)(4). On July 5, 1991, respondent filed her respective answers denying petitioners' allegations, and making affirmative allegations in support of the fraud issues as to which respondent had the burden of proof.

By notice of trial setting, dated April 15, 1992, the cases were calendared for trial during the trial session in Philadelphia, Pennsylvania, commencing on September 21, 1992. Attached to that notice of trial setting was the Court's Standing Pre-Trial Order. On August 24, 1992, respondent filed unopposed motions for continuance to permit petitioners to have a second opportunity to resolve their cases with respondent's Appeals Office without the necessity of trial. The Court granted those motions. Attorney Riley failed to provide the Appeals officer with the financial information or other documents to support petitioners' claims, including any innocent spouse claims. The Appeals officer made repeated and unsuccessful attempts to contact Attorney Riley about the cases.

---

[1] However, in the statement of facts in support of the assignments of error, the petitions asserted that each petitioner wife was an innocent spouse under section 6013(e). Rule 34(b)(5). Had the petitions clearly raised innocent spouse claims, Attorney Riley would have had a conflict of interest in representing both petitioner husbands and petitioner wives. Innocent spouse status requires the alleged innocent spouse to establish, among other things, that the understatement of tax is attributable to grossly erroneous items of the culpable spouse.

By notice of trial setting, dated November 18, 1992, the cases were again calendared for trial during the trial session in Philadelphia, Pennsylvania, commencing on April 19, 1993. Again the Court's Standing Pre-Trial Order was attached to the notice of trial setting. On March 30, 1993, Attorney Riley filed motions to continue the trial of the cases to permit petitioners to avail themselves of the opportunity to submit offers in compromise.[2] After confirming that petitioners had submitted to respondent such offers in compromise, the Court granted petitioners' motions for continuance. On June 10, 1993, respondent notified Attorney Riley that the offers in compromise could not be processed due to missing information and because the offers of $0 were unacceptable. The letter rejecting the Quinns' offer indicates that no documentation supporting the innocent spouse claim had been submitted with the offer, and thus respondent was not able to consider that claim.

By notice of trial setting, dated July 1, 1993, the cases were again calendared for trial during the Philadelphia, Pennsylvania, trial session, commencing December 6, 1993. On August 11, 1993, respondent sent a letter to Attorney Riley suggesting a meeting on August 23, 1993; respondent followed the letter with a telephone call on August 17, 1993. Attorney Riley

---

[2] Generally, offers in compromise presuppose liability for the tax. Such offers deal with collectability, a matter in which this Court has no role.

never responded to either the letter or the telephone call. On September 2 and 3, 1993, respondent mailed to Attorney Riley interrogatories for the Gaskins and for the Quinns, respectively. By letter dated September 14, 1993, respondent reminded Attorney Riley of the outstanding interrogatories and of the attempts to schedule a meeting. On September 15, 1993, respondent mailed to Attorney Riley requests for production of documents. On September 23, 1993, respondent filed with the Court and mailed to Attorney Riley her first sets of requests for admissions. On October 21, 1993, Attorney Riley mailed the respective answers to respondent's first sets of requests for admissions.

Attorney Riley having failed to respond to the requests for answers to interrogatories and production of documents, respondent, on October 25, 1993, filed motions to compel responses to respondent's interrogatories and to impose sanctions and motions to compel responses to respondent's requests for production of documents and to impose sanctions. By orders dated October 26 and 27, 1993, the Court granted these motions as to the Quinns and the Gaskins, respectively. The sanctions portions of those motions were deferred to the trial session.

Attorney Riley had mailed responses to respondent's interrogatories and requests for documents on October 21, 1993. In such responses, petitioners objected to answering most of respondent's interrogatories designed to elicit information on the innocent spouse claim on the ground that providing such

responses would be burdensome and oppressive. Petitioners did respond to interrogatories in regard to petitioners' educational level, marital status, and responsibility for household finances; they provided limited employment histories. In response to respondent's requests for documents, petitioners indicated they possessed no records regarding bank accounts, investments, household expenses information, and automobiles.

On November 8, 1993, the cases were consolidated for trial, briefing, and opinion. By order dated November 22, 1993, the cases were continued upon petitioners' unopposed motion based upon a medical emergency.

By notice of trial setting, dated January 6, 1994, the cases were calendared for trial during the trial session in Philadelphia, Pennsylvania commencing on June 6, 1994. Again a copy of the Court's Standing Pre-Trial Order was attached to the notice.

On February 15, 1994, and March 4, 1994, respondent's counsel telephoned Attorney Riley's office, was unable to speak with him, and left messages for him to return the calls. Attorney Riley did not return such telephone calls. On March 7, 1994, respondent's counsel wrote to Attorney Riley seeking to discuss the cases. Respondent received no response to this letter. On May 3, 1994, respondent's counsel again telephoned Attorney Riley's office and received no return call. On May 4, 1994, respondent's counsel wrote to Attorney Riley reminding him

of the trial date and indicating respondent would seek a default judgment or move to dismiss for failure properly to prosecute if Attorney Riley continued to fail to cooperate.

On May 12, 1994, respondent mailed her trial memorandum to the Court and to Attorney Riley.  Attorney Riley did not prepare a trial memorandum.  On June 2, 1994, Attorney Riley contacted respondent's counsel indicating he would be out of town until late on June 3, 1994.  Respondent's counsel offered to meet during the weekend of June 4 and 5, 1994, but Attorney Riley failed to contact him.

At the calendar call of the trial session on June 6, 1994, there were no stipulations of fact by the parties, no exchanges of documents, and no trial memorandum from petitioners.  The Court's Standing Pre-Trial Order requires the parties to meet and to stipulate under Rule 91 "to the maximum extent possible".  The Standing Pre-Trial Order also requires the parties to exchange trial memoranda (including their witness lists and copies of all documents to be offered at trial that have not been stipulated to) 15 days before the calendar call of the trial session. Respondent's counsel had complied to the extent that he could do so unilaterally.  Attorney Riley appeared at the calendar call but had not complied with the Court's Standing Pre-Trial Order. Instead, Attorney Riley filed a motion for continuance which the

Court denied.[3]  Also on June 6, 1994, respondent filed a motion to dismiss for failure properly to prosecute as to all issues upon which petitioners had the burden of proof.  The Court orally granted respondent's motion on that date and set the case for trial on June 13, 1994, on the fraud issues as to which respondent had the burden of proof.  On June 10, 1994, Attorney Riley filed a motion to set aside the default.  In an affidavit attached to the memorandum in support of this motion, Attorney Riley stated that his representation of petitioners was on a pro bono basis, and that he had not billed the petitioners nor did he intend to be compensated by them for his time or expenses in connection with these cases.

During a recess of the oral argument on petitioners' motion to set aside the default, the parties met privately and agreed to a partial settlement.  Petitioner husbands conceded the deficiencies in income tax for all years at issue and the additions to tax for fraud for 1979 and 1980.  Respondent conceded the fraud additions for 1981.  These concessions left only the innocent spouse issues remaining and also resolved Attorney Riley's conflict of interest so that he could represent petitioner wives on their innocent spouse claims.  See supra note 1.  Attorney Riley agreed to provide documents in regard to the

_____

[3]  Actually Attorney Riley had mailed the motion for continuance to the Clerk's Office in Washington, D.C., where it was received on the morning of June 6, 1994.

innocent spouse issues and a trial memorandum to respondent by June 24, 1994. The parties agreed to file status reports with the Court by July 11, 1994. The Court accepted the parties' settlement. After the settlement and Attorney Riley's agreement to cooperate in the trial preparations, the Court vacated its oral direction granting respondent's motion to partially dismiss and deemed both respondent's motion to dismiss and petitioners' motion to set aside the default to be moot. The Court issued an order dated June 10, 1994, requiring petitioners to provide the documents relating to the innocent spouse issues and trial memorandum to respondent, and for the parties to file status reports with the Court as agreed. That order expressly provided that "all documents relating to the innocent spouse issues in this case must be furnished to counsel for respondent by petitioners on or before June 24, 1994." Respondent's motion to compel production of documents, including those documents on the innocent spouse issues, had been granted by the Court in October of 1993, and petitioners still had not complied with the Court's 1993 orders.

On or about June 24, 1994, Attorney Riley provided respondent with copies of various documents. Many of the copies were illegible and many were items that petitioners previously had denied possessing. Respondent ascertained that Attorney Riley had other documents in his possession that had not been provided, documents that petitioners had earlier denied

possessing. Attorney Riley agreed to produce the additional documents by July 15, 1994. Respondent also wished to review the original documents from which the illegible copies had been made.

On July 11 and 12, 1994, the parties filed their status reports with the Court, indicating they had not resolved the innocent spouse issues. By order dated July 12, 1994, the Court officially calendared the cases for trial during a special trial session of the Court in Philadelphia, Pennsylvania, beginning on August 22, 1994, and ordered that all exhibits not stipulated to be exchanged on or before August 8, 1994.

On July 15, 1994, Attorney Riley's law clerk (the law clerk) arrived at respondent's office with six boxes of records for respondent's review. Respondent's counsel was able to review only three boxes in the time the law clerk made himself available. The law clerk declined to leave the remaining documents with respondent's counsel, but agreed to return on August 5, 1994. On August 2, 1994, Attorney Riley sent a letter to respondent's counsel indicating the documents would be available for review only in his office, a 2-hour drive from respondent's office in Philadelphia. In a conference call on August 3, 1994, the Court directed Attorney Riley to have the remaining boxes delivered to Philadelphia for respondent's review; this delivery occurred on August 5, 1994. On August 19, 1994, Attorney Riley provided respondent with documents relating

to Mr. Gaskins' Social Security and worker's compensation payments.

The trial took place on August 24 and 25, 1994. Late in the day on the first day of trial, Attorney Riley produced an additional box of documents that had not previously been furnished to respondent's counsel. This box contained items that respondent had requested in September of 1993, and that petitioners had denied having. The trial was recessed until 1:00 p.m. the following day to permit respondent's counsel to review these documents. These financial records were particularly important in the Court's ultimate finding that the Quinns' substantial accumulated savings came from petitioner wife's frugality and careful management of her earnings rather than from any unreported income of her husband.

During the trial, Attorney Riley attempted to introduce copies of certain of the Quinns' tax returns, which the Court declined to receive. The Court kept the record of the trial open until September 26, 1994, so that copies of the original returns as filed could be obtained and filed with the Court. On September 26, 1994, Attorney Riley filed a motion to extend time to keep the record open. The Court granted this motion, extending the time until October 25, 1994. On November 16, 1994, the Court, having received no further documents, closed the evidentiary record in the case.

Discussion

Generally, a taxpayer who has substantially prevailed in a Tax Court proceeding may be awarded reasonable litigation costs incurred in connection with such court proceeding. Sec. 7430(a). To be entitled to an award of reasonable litigation costs, the moving party must establish all of the following: (1) That the party exhausted the administrative remedies (sec. 7430(b)(1)); (2) that the party did not protract the proceeding unreasonably (sec. 7430(b)(4)); (3) that the position of the United States in the proceeding was not substantially justified (sec. 7430(c)(4)(A)(i)); (4) that the party substantially prevailed with respect to the amount in controversy, or with respect to the most significant issue or set of issues presented (sec. 7430(c)(4)(A)(ii)); (5) that the party met the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1988) (sec. 7430(c)(4)(A)(iii)); and (6) that the costs are reasonable as defined in section 7430(c)(1).

The parties agree that administrative remedies have been exhausted, that petitioner wives substantially prevailed as to the innocent spouse issues, and that petitioner wives meet the net worth requirements. The parties disagree as to whether petitioner wives unreasonably protracted the proceedings, whether respondent's position was substantially justified, and whether the costs requested are reasonable.

Unreasonable Protraction of Proceedings

When this consolidated case was called from the calendar for trial on June 6, 1994, that was the fourth time the case had been noticed for trial. Attorney Riley's failure to comply with this Court's Standing Pre-Trial Order and to prepare these cases for trial for that June 6, 1994 trial session is detailed above. Respondent's motion to dismiss all issues as to which petitioners had the burden of proof for failure properly to prosecute was granted because of such failure. The Court set the case for trial on June 13, 1994, on the fraud issues as to which respondent had the burden of proof. Attorney Riley then filed a motion to set aside the default which was heard on June 10, 1994. In the course of oral argument on that motion, the parties met during a recess and settled the deficiency and fraud issues involving petitioner husbands, leaving only the innocent spouse issues remaining. The Court accepted the parties' settlement, vacated the prior dismissal, and set a schedule looking to the trial of the innocent spouse issues.

That did not, however, end the delays. Attorney Riley's delays in furnishing documents continued right up to and even during the trial itself. On or about June 24, 1994, Attorney Riley began to provide the relevant documents, and his production of documents continued intermittently up to and even during trial itself. The Court's intervention was required to effectuate this

exchange of documents. The trial in August of 1994 had to be recessed because of his delays in producing documents, many of which he and petitioners had earlier denied possessing. We find that petitioners and Attorney Riley unreasonably protracted this proceeding.

### Respondent's Position

The position of the United States for purposes of litigation costs refers to the position of the United States in a judicial proceeding. Sec. 7430(c)(7)(A). A judicial proceeding in this Court is commenced with the filing of a petition. Rule 20(a). Generally, respondent initially takes a position on the date she files her answer in response to the petition. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144.

Whether respondent's position is substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances as well as legal precedents relating to the cases. See Pierce v. Underwood, 487 U.S. 552 (1988) (construing similar language in the Equal Access to Justice Act, 28 U.S.C. sec. 2412 (1988)); Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989); Huffman v. Commissioner, supra at 1147. The fact that the Commissioner eventually loses or concedes the case does not in itself establish that a position is unreasonable.

<u>Wilfong v. United States</u>, 991 F.2d 359, 364 (7th Cir. 1993); <u>Sokol v. Commissioner</u>, 92 T.C. 760, 765 (1989); <u>Wasie v. Commissioner</u>, 86 T.C. 962, 968-969 (1986).  The reasonableness of respondent's position necessarily requires considering what respondent knew at the time she took the position and the events that occurred afterwards.  See <u>Rutana v. Commissioner</u>, 88 T.C. 1329, 1334 (1987); <u>Don Casey Co. v. Commissioner</u>, 87 T.C. 847, 862 (1986); <u>DeVenney v. Commissioner</u>, 85 T.C. 927, 930 (1985).

To establish eligibility for innocent spouse relief, a taxpayer must establish that:  (1) A joint Federal income tax return was filed; (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the alleged innocent spouse did not know, and had no reason to know, of the substantial understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the alleged innocent spouse liable for the deficiency attributable to such substantial understatement.  Sec. 6013(e)(1).  At issue in these cases were items (3) and (4) above.

Factors to be considered in determining whether the spouse had reason to know are:  the alleged innocent spouse's level of education; the spouse's involvement in the family's business and financial affairs; the presence of expenditures that appear lavish or unusual when compared to the family's past levels of

income, standard of living, and spending patterns; and the culpable spouse's evasiveness and deceit concerning the couple's finances. <u>Stevens v. Commissioner</u>, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; <u>Flynn v. Commissioner</u>, 93 T.C. 355, 365-366 (1989). Factors to consider in determining whether it would be inequitable to hold the taxpayer liable include: (1) Whether the taxpayer seeking relief significantly benefited from the erroneous items (<u>Purificato v. Commissioner</u>, 9 F.3d 290, 296 (3d Cir. 1993), affg. T.C. Memo. 1992-580; <u>Estate of Krock v. Commissioner</u>, 93 T.C. 672, 677 (1989)); (2) whether the spouse seeking relief had been deserted by, or divorced or separated from the culpable spouse (sec. 1.6013-5(b), Income Tax Regs.); and (3) whether probable future hardships would be visited upon the innocent spouse if she is not relieved of liability (<u>Sanders v. United States</u>, 509 F.2d 162, 171 n.16 (5th Cir. 1975)).

Respondent's 1993 interrogatories and requests for documents were designed to elicit information concerning these factors. In petitioners' October 21, 1993, answers to respondent's interrogatories, petitioners provided information on petitioners' educational levels and marital status, and that petitioner wives handled the household finances. Petitioners declined to answer respondent's interrogatories regarding their assets and expenditures. In their responses to respondent's requests for

documents, petitioners denied possessing most of the documents requested, items that were necessary to determine petitioners' previous levels of income, their lifestyles, and whether petitioner wives benefited from the understatements.  Petitioner wives produced these same documents over the period June 24, 1994, up to the date of, and during, the trial on August 24, 1994.  At the end of the first day of trial, the trial had to be recessed until 1:00 p.m. the following day to afford respondent's counsel an opportunity to review a full box of documents that had not been produced prior to that time.  At trial, petitioners provided testimony regarding petitioner wives' knowledge and involvement with petitioner husbands' business and petitioners' spending habits.

Based on this testimony and a review of the multitude of documents belatedly submitted, the Court concluded that petitioner wives were entitled to innocent spouse relief.  The source of the Quinns' substantial accumulated savings was a critical item, particularly in view of Mrs. Quinn's obvious astuteness in financial matters.  Similarly, Mrs. Gaskins' involvement in her husband's business affairs raised credibility issues not all of which were resolved by the Court in her favor.  Prior to the exposition of these matters at the trial, the Court's analysis of all the facts and circumstances of the case, and the Court's resolution of credibility issues, it would not

have been unreasonable to conclude that petitioner wives were not eligible for such relief. Respondent was not required to concede this case before she received the documentation necessary to prove petitioner wives' contentions, particularly when there were credibility issues to be resolved. See Brice v. Commissioner, T.C. Memo. 1990-355, affd. without published opinion 940 F.2d 667 (9th Cir. 1991). We hold that respondent's position was substantially justified at the time the answers were filed and up through the trial and the Court's final adjudication of the matter.

Reasonable Costs

Section 7430 allows recovery for "reasonable litigation costs incurred in connection with such court proceeding." Sec. 7430(a)(2). Reasonable litigation costs include:

> reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate. [Emphasis added.]

Sec. 7430(c)(1)(B)(iii). Respondent argues that petitioners have not "paid or incurred" attorney fees because Attorney Riley's representation was pro bono and, in the alternative, that the requested amounts are in excess of those allowable. Based on our findings that petitioner wives and Attorney Riley unreasonably protracted the proceeding and that respondent's position was

substantially justified at all times throughout the proceeding, it is not necessary for us to address these arguments.[4]

In keeping with the above,

<u>Appropriate orders and</u>

<u>decisions will be entered.</u>

---

[4] The question of awarding attorney's fees under sec. 7430 where taxpayer's counsel has agreed to provide representation pro bono seems to be one of first impression. Pro se taxpayers are not entitled to an award for the value of their services, since no fee is paid or incurred. <u>Corrigan v. United States</u>, 27 F.3d 436 (9th Cir. 1994); <u>United States v. McPherson</u>, 840 F.2d 244 (4th Cir. 1988); <u>Frisch v. Commissioner</u>, 87 T.C. 838 (1986).